Exceptions sustained, new trial ordered, costs to plaintiff to abide event.

---

NEW YORK SECURITY AND TRUST COMPANY, Respondent, *v.* ERNST LIPMAN and Others, Defendants; THE HONG KONG AND SHANG-HAI BANKING CORPORATION and Others, Appellants.

*Pledgor and pledgee — possession of indicia of title — legality of an agreement for the substitution of other property for that on deposit — antecedent debt — holder for value — objection that an action will not lie in equity, must be taken below.*

In an action brought to determine a controversy relative to the proceeds of 200 bales of burlaps sold by the plaintiff under a warehouse receipt issued by the Terminal Warehouse Company to the plaintiff, it appeared that the defendants, Lipman & Co., had in the warehouse on December 1, 1891, 801 bales of burlaps and that they had previously informed the warehouse company that when they called for negotiable receipts they wanted them made out without bale marks, so that, if they desired, they could substitute other bales equal in kind and quality for those in storage; that in fact substitutions were made from time to time to such an extent that none of the original bales in storage on December 1, 1891, remained in storage on December 15, 1892; that on December 1, 1891, Lipman & Co., pledged to the plaintiff, for a loan of $50,000, 500 bales represented by five receipts for 100 bales each; that they reduced their debt gradually, but on December 15, 1892, they still owed the plaintiff $20,000 for which it held two receipts for 100 bales each, running to Lipman & Co., and indorsed in blank; that upon the last-mentioned date (Lipman & Co. having failed a short time before), the plaintiff exchanged the receipts which it held for one receipt for 200 bales made out in its own name; that prior to such transaction and on the 8th day of December, 1892, Antony Gibbs & Sons, through Lipman & Co. as their factors, stored with the warehouse company fifteen bales of burlap for which Lipman & Co. held bills of lading; that the plaintiff's receipt issued December 15, 1892, for 200 bales covered these fifteen bales, on which date there were in the warehouse (including the fifteen bales of Antony Gibbs & Sons) only 200 bales of burlap stored by Lipman & Co., and no more, although on December eighth there had been 200 bales exclusive of the fifteen bales of Antony

Gibbs & Sons, fifteen of such 200 bales having been withdrawn by Lipman & Co. between the eighth and the fifteenth of December; the plaintiff never saw the bills of lading or shipping documents which Antony Gibbs & Sons had sent to Lipman & Co. as indicia of title.

*Held*, that it was competent for Lipman & Co. and the warehouse company to make the agreement by which receipts were to be issued without bale marks, so that other bales could be substituted for those in storage; that such agreement violated no statute and was not against public policy;

That, as Antony Gibbs & Sons had intrusted Lipman & Co. with the possession of the bills of lading for the fifteen bales, Lipman & Co. were, under the 3d section of the Factor's Act, to be deemed to be the true owners of the merchandise so far as to give validity to a contract made by Lipman & Co. with the plaintiff for money advanced upon the faith of the merchandise;

That the 4th section of the Factor's Act, providing that every person, who should accept or take any merchandise on deposit from any agent or factor as security for an antecedent debt, should not acquire any greater right than the agent had at the time of the deposit, had no application to the facts of this case;

That the plaintiff was entitled, so far as that was necessary to the full payment of its advances made to Lipman & Co., to employ the proceeds of the sale of the bales stored by Lipman & Co., as factors for Antony Gibbs & Sons, and covered by the receipt for 200 bales issued December fifteenth;

That the surrender of the original bales by the Terminal Warehouse Company, upon the order of Lipman & Co., constituted a valuable consideration for the giving of new bales by Lipman & Co. in substitution therefor, and that the plaintiff, as pledgee, was, as to to the bales stored in substitution, a holder for value in the usual course of business;

That where a party has not by his answer nor on the trial made the defense that the action could not be maintained in equity, he should not be allowed to raise this objection for the first time in the appellate court.

APPEAL by the defendants, The Hong Kong and Shanghai Banking Corporation and others, from so much of a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 26th day of June, 1894, upon the decision of the court rendered after a trial at the New York Special Term, as provides as follows:

1. "Ordered, adjudged and decreed that the plaintiff rightfully and lawfully received on January 28, 1893, the sum of twenty-two thousand eight hundred and twenty-three dollars and eighty-four cents ($22,823.84), referred to in the complaint in this action, and that the plaintiff is entitled to hold and retain personally out of that sum the sum of twenty thousand seven hundred and seventy-four dollars and seven cents ($20,774.07), as the amount due to plaintiff

as balance of a loan by plaintiff to the defendants Lipman & Company, and for expenses incurred by plaintiff in sale of collateral to that loan, and that plaintiff's rights and title to the sum of $20,774.07 are prior and paramount to that of any other party to this action, and that all of the defendants are excluded from any interest in or lien upon said sum of $20,774.07, and that plaintiff, as court depositary, pay said sum to itself personally.

2. "Ordered, adjudged and decreed, that the surplus sum of two thousand and forty-nine dollars and seventy-seven cents ($2,049.77), with interest at six per cent from January 28th, 1893, to April 12th, 1893, and with interest at two per cent from April 12th, 1893, to this date, amounting altogether to the sum of two thousand one hundred and twenty-four and eighteen one-hundredths dollars ($2,124.18), be disposed of and paid out by the plaintiff as a depositary of this court, as follows:

"The plaintiff shall pay to itself the sum of $219.87 as costs of this action. The remaining sum of $1,904.31 shall be paid by the plaintiff to the following defendants or their attorneys in the following proportions:

"To Cotesworth & Powell $\frac{1022.05}{22341.91}$, of said sum, or the sum of eighty-seven dollars and seventy-one cents ($87.71).

"Antony Gibbs & Sons $\frac{1637.35}{22341.91}$, of said sum, or the sum of one hundred and thirty-nine dollars and fifty-six cents ($139.56).

"The Hong Kong & Shanghai Banking Corporation $\frac{2472.06}{22341.91}$, of said sum, or the sum of two hundred and ten dollars and seventy-one cents ($210.71).

"Giles Loder, Limited, $\frac{3451.64}{22341.91}$, of said sum, or the sum of two hundred and ninety-four dollars and twenty cents ($294.20).

"Samuel W. Milbank, as receiver, the balance of said sum, or the sum of one thousand one hundred and seventy-two dollars and thirteen cents ($1,172.13).

3. "Ordered, adjudged and decreed, that such payments being made, each and all of the defendants herein, their agents, attorneys and servants, are permanently enjoined from prosecuting the plaintiff for the amount received by the plaintiff from the sale of the two hundred bales of burlaps mentioned in the complaint herein, or for the bales themselves, and from bringing or maintaining or continuing any actions against the plaintiff in respect thereto, or from

making any demand or application against the plaintiff in respect thereto.

4. " Ordered, adjudged and decreed, that upon compliance by the plaintiff with this decree all the defendants herein are barred and foreclosed as against the plaintiff of all right or interest in or lien upon the two hundred bales of burlaps referred to in the complaint, or to their proceeds."

Also an appeal by the defendants, David Powell and others, from so much of said judgment as provides as follows :

1. " Ordered, adjudged and decreed, that the plaintiff rightfully and lawfully received on January 28th, 1893, the sum of twenty-two thousand eight hundred and twenty-three dollars and eighty-four cents ($22,823.84), referred to in the complaint in this action, and that the plaintiff is entitled to hold and retain personally out of that sum the sum of twenty thousand seven hundred and seventy-four dollars and seven cents ($20,774.07) as the amount due to plaintiff as balance of a loan by plaintiff to the defendants Lipman & Company and for expenses incurred by plaintiff in sale of collateral to that sum of $20,774.07, is prior and paramount to that of any other party to this action, and that all of the defendants are excluded from any interest in or lien upon said sum of $20,774.07, and that plaintiff as court depositary pay said sum to itself personally.

2. "And further in so far as said judgment and decree provides that the surplus sum of $2,049.77, with interest as stated, be disposed of by paying to Cotesworth & Powell $\frac{1029.05}{22341.91}$, or the sum of $87.71 (whereas, in any event, said defendants should receive $\frac{1029.05}{15609.49}$), and provides for the payment to Samuel Milbank, as receiver, the sum of $1,172.13.

"And further, in so far as said judgment and decree provides as follows :

" 3. ' Ordered, adjudged and decreed, that such payments being made, each and all of the defendants herein, their agents, attorneys and servants, are permanently enjoined from prosecuting the plaintiff for the amount received by the plaintiff from the sale of the two hundred bales of burlaps mentioned in the complaint herein, or for the bales themselves, and from bringing or maintaining or continuing any actions against the plaintiff in respect thereto, or from

making any demand or application against the plaintiff in respect thereto.'

"And further, in so far as said judgment and decree provides as follows:

"4. 'Ordered, adjudged and decreed that upon compliance by plaintiff with this decree all the defendants herein are barred and foreclosed as against the plaintiff of all right or interest in or lien upon the two hundred bales of burlaps referred in the complaint, or to their proceeds.'"

*S. Sidney Smith* and *Franklin B. Lord,* for the appellants Antony Gibbs & Sons and The Hong Kong and Shanghai Banking Corporation.

*Michael II. Cardozo* and *Edgar J. Nathan,* for the appellants Cotesworth & Powell.

*William B. Hornblower* and *Howard A. Taylor,* for the respondent.

PARKER, J.:

This suit was brought on the equity side of the court for the purpose of obtaining a determination of all controversy relating to the title to the proceeds of 200 bales of burlap which had been sold by the plaintiff under a warehouse receipt issued by the Terminal Warehouse Company. The plaintiff claimed to be entitled to the greater part of the proceeds. Some thirty of the defendants each preferred a claim to the proceeds of some portion of the 200 bales. The several claims of these appellants were as follows: Antony Gibbs & Sons asserted title to fifteen of the bales, the Hong Kong and Shanghai Banking Corporation to twenty-two bales, Cotesworth & Powell to nine bales, and each party claimed to be entitled to the proceeds of the sale of the several bales to which they asserted ownership.

The point is made by one of the appellants that no case was made for any relief in equity, and that the complaint should have been dismissed, citing the decision of this court in *New York Security & Trust Company* v. *Blydenstein* (70 Hun, 216). Blyndenstein & Co. opposed a motion made in this suit for a preliminary

injunction restraining any of the defendants from prosecuting any other suit against the plaintiff affecting the title to any of the 200 bales in controversy. Their opposition was unsuccessful at the Special Term, and Blydenstein & Co. appealed, which appeal resulted in a reversal of the order, so far as they were concerned, at General Term. This order was subsequently affirmed in the Court of Appeals. (139 N. Y. 657.) Had the appellant, who now makes the point, seasonably made objection that an action in equity would not lie, the decision of the court in Blydenstein's appeal would sustain his position. But all of the defendants, except Blydenstein & Co., seem to have acquiesced in the form of the action, and this appellant did not, by his answer, raise the question whether the suit was properly brought on the equity side of the court. Nor do we find in the record that he made such an objection during the progress of the trial. It is now too late to make the objection for the first time, and as to these appellants it must be held that the form of the action is good. (*Town of Mentz* v. *Cook*, 108 N. Y. 504; *Ostrander* v. *Webber*, 114 id. 95.)

After the decision of the Court of Appeals on the appeal of Blydenstein & Co., to which we have referred, they (Blydenstein & Co.) prosecuted their action in the Federal court against the trust company (this plaintiff) for a conversion of the proceeds of the bales claimed by them, and it resulted in a judgment in favor of the trust company. Subsequently this judgment was affirmed in the Circuit Court of Appeals. (67 Fed. Rep. 69.) The decision of the Special Term is based upon the decision of that court, and we should be content to rest an affirmance of the judgment upon the discussion of the court in that case were it not that the appellants apparently take a different position than did the counsel for Blydenstein & Co. in the case before the Circuit Court of Appeals. The argument of the court in *Blydenstein's* case, leading to the conclusion that these appellants had so clothed Lipman & Co. with the indicia of ownership as to the bales of burlap in question as to protect any one who, within the terms of the Factors' Act, dealt with Lipman & Co. upon the faith of such apparent ownership, seems to us conclusive.

The appellants have apparently reached the same conclusion, for

neither of them, on this appeal, undertakes any discussion of that question. On the contrary, one of the counsel states in his brief that "It may very well be that if Lipman & Co. had sold the goods, and had been paid for them or had pledged them to some one who had parted with something on the faith of their possession, the title of Gibbs & Sons and the Hong Kong and Shanghai Banking Corporation would have been lost; but this would be because they would be estopped under the Factors' Act."

While a discussion of that question is now wholly undesirable for the reasons given, it is, nevertheless, necessary to state briefly the leading facts, in order to appreciate fully the questions which the appellants bring to our attention.

September 7, 1892, Lipman & Co. issued their note for $50,000 to the New York Security and Trust Company, the plaintiff, in renewal of a previous loan made to Lipman & Co. in December, 1891. As security for the loan, Lipman & Co. continued the pledge made to secure the loan of December, 1891, to the trust company of 500 bales of burlap in the bonded warehouse of the Terminal Warehouse Company of New York city.

The evidence of the pledge consisted of five negotiable warehouse receipts, for 100 bales each, issued by the Terminal Warehouse Company. Each of the receipts bore the date of December 1, 1891, at which time they were issued to Lipman & Co., and by them, at about that time, delivered to the plaintiff as collateral to the loan of like amount with that made on September 7, 1892. In October and November, 1892, Lipman & Co. reduced the amount of the loan by payments aggregating $30,000, and received from the plaintiff three of the warehouse receipts, representing 300 of the 500 bales of burlap.

The situation of the loan on December 15, 1892, was that Lipman & Co. still owed the trust company on account of the loan $20,000, and its security for such balance consisted of the pledge of 200 bales of burlap, which was represented by two warehouse receipts. These receipts were in the name of Lipman & Co., which firm had indorsed them in blank. On the day last named the trust company presented the two receipts at the warehouse, and received in exchange a single warehouse receipt for 200 bales made out in its own name. Shortly prior to this action being taken Lipman & Co. failed, without hav-

ing paid the $20,000 then owing to the plaintiff on account of the loan.   Thereafter the 200 bales were sold, the amount realized being $22,823.84.   The judgment directs the payment of plaintiff's claim in full, and awards to the appellants a *pro rata* share in the sum remaining after satisfying plaintiff's claim.   The appellants severally insisted then, as now, that they should each receive the total proceeds of the bales which they claimed to own.   In order to avoid confusion we shall only discuss the facts relating to the claim of Antony Gibbs & Sons.   Their case is taken, rather than that of any of the other appellants, because in its facts it is at least as favorable to the position taken by the appellants as any.

The bales, claimed by Antony Gibbs & Sons, were stored in the Terminal Warehouse Company's warehouse on the 8th day of December, 1892, three months after the loan by the trust company was made, and only seven days before it surrendered to the warehouse company the warehouse receipts which had been indorsed to it in blank by Lipman & Co., and received from the warehouse company a receipt in its own name for the 200 bales.   When the last-named warehouse receipts were given there were but 200 bales of burlap which had been stored there by Lipman & Co., and included among the 200 bales were the fifteen bales of Antony Gibbs & Sons, which Lipman & Co. had stored in the warehouse seven days before.   As we have already observed, the appellants in effect concede that, notwithstanding Antony Gibbs & Sons were the owners of the fifteen bales stored December eighth by their factors, Lipman & Co., still, they had so clothed Lipman & Co. with the *indicia* of title that had the plaintiff thereafter made a loan to Lipman & Co. upon a pledge of the fifteen bales secured by a negotiable warehouse receipt, the trust company would have been entitled to so much of the proceeds of the bales as should be necessary to satisfy the loan.   In such case, say the appellants, the trust company would have been entitled to the protection of the 3d section of the Factors' Act, which reads as follows :

" Every factor or other agent intrusted with the possession of any bill of lading, custom house permit or warehouse keeper's receipt for the delivery of any such merchandise, and every such factor or agent not having the documentary evidence of title, who shall be intrusted with the possession of any merchandise for the purpose of

sale, or as a security for any advances to be made or obtained thereon, shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person, for the sale or disposition of. the whole or any part of such merchandise, for any money advanced, or negotiable instrument or other obligation in writing given by such other person upon the faith thereof." (4 R. S. [8th ed.] p. 2518.)

The advance to Lipman & Co. by the trust company having been made long before December eighth, and it appearing that the trust company never saw the bills of lading or the shipping documents which Antony Gibbs & Sons sent to Lipman & Co., furnishes the basis for the claim of the appellants that the section of the Factors' Act quoted does not apply. They insist that it necessarily follows from such facts that the trust company did not advance any money or take any action upon the faith of the fifteen bales of burlap. If there were no other facts than those to which the appellants refer, their position would be well taken. (*Moors* v. *Kidder*, 34 Hun, 534, 536.)

It is further insisted by the appellants, that if it be assumed that the plaintiff received the bales of burlap claimed by Antony Gibbs & Sons through the act of Lipman & Co., they took them as security for an antecedent debt or demand, and hence are denied the right to hold them by the 4th section of the Factors' Act, which provides that "Every person who shall hereafter accept or take any such merchandise in deposit from any such agent as security for any antecedent debt or demand, shall not acquire thereby or enforce any right or interest in or to such merchandise or document other than was possessed or might have been enforced by such agent at the time of such deposit." (4 R. S. [8th ed.] p. 2519.)

Summarized, the appellants' position is that if there were any evidence that Lipman & Co. pledged the fifteen bales claimed by Antony Gibbs & Sons to the trust company after their storage, it was done to secure an antecedent debt, and the trust company acquired no rights thereunder; that the plaintiff advanced nothing upon the faith of the documents intrusted to Lipman & Co., nor upon the bales in the warehouse, and that such bales were not in fact pledged by Lipman & Co. to the trust company.

In taking this position the appellants ignore certain important and, we think, controlling facts. When the five warehouse receipts

were issued, December 1, 1891, there were 801 bales in the posses-
sion of Lipman & Co. and stored in the warehouse. Prior to that
time the representative of Lipman & Co. had informed the officers
of the Terminal Warehouse Company that when he called for nego-
tiable warehouse receipts he wished to have them made out without
bale marks, so that he could substitute other bales for them when-
ever he should desire to do so. So, while Gutman, the representa-
tive of Lipman & Co., testified that there was nothing said about
substitution at the time he obtained the five negotiable warehouse
receipts dated December 1, 1891, he also testified that when he first
took out negotiable receipts " they (the officers of the warehouse
company) asked me whether I wanted any particular bales, and I
said no. I wanted to have no bale marks, so that I could substitute
whenever I like. But since that time, when I sent down for nego-
tiable warehouse receipts, they always made them out the same way,
so that when these particular warehouse receipts were made out
there was no conversation on the subject."

It further appears from his testimony that, under these negotiable
warehouse receipts, Lipman & Co., from time to time, substituted
bales of burlap for others which had been taken out and sold. The
absence of any special conversation on the subject at the time the
warehouse receipts in question were taken out does not affect the
situation, because, having informed the officers of the ware-
house company that when he called for negotiable warehouse
receipts he wanted them made out without bale marks on, so
that he could make substitution from time to time, the request
for open negotiable warehouse receipts representing the 500
bales, and their issuance by the warehouse company was neces-
sarily under their previous agreement, which provided for sub-
stitution in such cases. Each of the receipts issued expressed an
agreement by the warehouse company to deliver to Lipman & Co.,
or to their assignees, 100 bales of burlap upon the return of the
receipts. By it, the warehouse company further agreed that while
the receipts were outstanding it would keep on hand ready for
delivery the number of bales called for by it, but not that it would
deliver bales bearing any particular marks, and, at the time of issu-
ing the five open receipts as we have observed, there were in the ware-
house 801 bales or 301 more than the amount covered by the receipts.

Lipman & Co., in accordance with the usual custom in such cases, and their agreement with the warehouse company, continued thereafter to deposit bales of burlap in the warehouse as they were received from time to time, and to sell burlap which was stored, and to call for deliveries to their purchasers, the oldest bales being always held for delivery on the open receipts, and when they were delivered the next oldest bales were substituted. Thus the bales which were on hand at the time the warehouse receipts in question were given, were after a time all disposed of by this process of substitution, new bales being put in the place of the old as fast as they were taken out, so that there was always in the possession of the warehouse company a sufficient number of bales to make good the agreement, which the warehouse company expressed in its receipts. The arrangement which Lipman & Co. had with the warehouse company made it possible to take out the old bales from the warehouse, and put in new ones without the necessity of making new receipts every time there was a sale. Such was the agreement, and of its validity there seems to be no doubt. No statute was violated, nor is any reason apparent for deeming it against public policy for a bailee to agree with his bailor that, if he (the bailor) shall at any time have on storage a greater amount of goods of the same kind and quality, he may substitute the surplus for a like quantity of that which was originally pledged. It was precisely that which the Terminal Warehouse Company and Lipman & Co. agreed should be done, and it was that which they in fact did.

Bales of burlap were never delivered upon the order of Lipman & Co., unless there were present in the warehouse other bales, apparently the property of Lipman & Co., to substitute in their place. By this process of substitution it so happened in the course of time that the entire 801 bales which were in the warehouse on the 1st day of December, 1891, were delivered to persons to whom they had been sold by Lipman & Co., and other bales stored in the warehouse were substituted in their place and stead.

On the 8th day of December, 1892, when Lipman & Co. stored with the warehouse company the fifteen bales to which Antony Gibbs & Sons claim to have the title, there were in the warehouse the 200 bales called for by the open negotiable receipt issued to the trust company. But between that date and the fifteenth of the same

month the warehouse company delivered to purchasers, on the order of Lipman & Co., fifteen of such 200 bales, and substituted the fifteen bales in question for them, after which there was in the warehouse only the 200 bales called for by the trust company receipt.

We have already asserted that the agreement, in pursuance of which this was done, was one the parties were entirely competent to make, and we next observe that the surrender of the original bales of burlap covered by the negotiable warehouse receipt upon the order of Lipman & Co. constituted a valuable consideration for the giving of the new bales by Lipman & Co. in. substitution, and that the pledgee as to the latter is a holder for value, in the usual course of business.

And that ruling applies to the substitution of the other appellants' bales, and brings the transaction within section 3 of the Factors' Act, instead of section 4, as contended by the appellants. The bales claimed by the appellants were not taken by the trust company as security for an antecedent debt, but in consideration of the surrender of other bales on the faith of which the loan had been made by the trust company. There was, therefore, a present parting of value independent of the antecedent debt.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.