New York Security and Trust Company, Respondent, *v.* Ernst Lipman et al., Defendants, and Hong Kong and Shanghai Banking Corporation, Antony Gibbs & Sons and Cotesworth & Powell, Appellants.

1. Factors' Act — Object of Statute. The object of the Factors' Act (L. 1830, ch. 179) was to protect innocent persons who deal in reliance upon apparent ownership, resting upon possession either of the merchandise itself or documentary evidence of ownership.

2. Agent to Sell and Remit not a Trustee. One who is intrusted with the lawful evidence of title to merchandise, to enable him to sell it and remit the proceeds, becomes an agent, within the meaning of the Factors' Act; and the fact that he is called a trustee in a secret agreement under which he is intrusted with the evidence of ownership does not make him a trustee as to third parties having no notice of the agreement.

3. Possession of Evidence of Title to Merchandise — Secret Trust Agreement — Warehouse Receipts. If the shipper to this country of goods originally owned by himself delivers the bills of lading and consular invoices to bankers, and the latter intrust them to the shipper's representative here, on receiving from him, by secret agreement, receipts stating that the goods are the property of the bankers and are to be held in trust for them, and that the proceeds of sale are to be remitted to them, so that the shipper is, in effect, intrusted with the documentary evidence of ownership by which he can import the goods and obtain warehouse receipts therefor, for the purpose of selling the goods as the agent of the bankers, the transaction comes within the Factors' Act and the shipper is to be deemed the true owner of the goods as to a stranger to the secret agreement and trust receipts, who in good faith and for value takes from the shipper warehouse receipts issued to the latter.

4. Warehouse Receipts — Substituted Merchandise. Where such merchandise as burlaps, in bales of practically the same value, is warehoused and negotiable open receipts for so many bales, without identifying marks, are duly issued under an agreement by which bales may be withdrawn and others substituted, the liability of the warehouseman to account to the *bona fide* holder for value, by transfer from the depositor, of an open receipt, for the number of bales mentioned therein and then on deposit, is a good consideration for the substitution of the same number of bales, of like constituent units, upon the surrender of the original receipt, and will uphold the surrenderer's right in bales substituted for those on the faith of which he parted with value.

*N. Y. Security & Trust Co.* v. *Lipman,* 91 Hun, 554, affirmed.

(Argued November 23, 1898; decided January 10, 1899.)

Appeal from a judgment of the late General Term of the Supreme Court in the first judicial department, entered January 16, 1896, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Michael H. Cardozo* and *Willard Parker Butler* for Cotesworth & Powell, appellants. The defendant bankers had an absolute title on December 14, 1892, to the goods previously delivered by them to Lipman & Co. under trust receipts, for they had advanced their money for the financing of the importations under an agreement for a lien. (*F. & M. N. Bank* v. *Logan*, 74 N. Y. 568; *F. & M. N. Bank* v. *Atkinson*, 74 N. Y. 587; *F. & M. N. Bank* v. *Hazeltine*, 78 N. Y. 104; *Moors* v. *Kidder*, 34 Hun, 534; 106 N. Y. 32; *Drexel* v. *Pease*, 11 N. Y. Supp. 133; 133 N. Y. 129.) Gutmann, as agent of Lipman & Co., never had any such possession of defendants' bales as gave him the right to make a valid pledge of them to the respondent or to the warehouse company, or enabled him to transfer title to either of them, and the court below erred in so holding. (*F. & M. N. Bank* v. *Logan*, 74 N. Y. 586; *Moors* v. *Kidder*, 34 Hun, 534; *Covell* v. *Hill*, 4 Den. 323; *Hazard* v. *Fiske*, 83 N. Y. 287; *Ballard* v. *Burgett*, 40 N. Y. 314; *Dows* v. *Perrin*, 16 N. Y. 325; *Austin* v. *Dye*, 46 N. Y. 500; *Edwards* v. *Dooley*, 120 N. Y. 540; *F. N. Bank* v. *Shaw*, 61 N. Y. 283.) There is no proof in the case that Lipman & Co. and the warehouse company could lawfully make, or ever did make, any agreement without the defendant bankers' knowledge, whereby their bales became substituted for earlier bales covered by the negotiable warehouse receipts and previously delivered to the plaintiffs, and the court below erred in finding that such agreement was made, or could be made, and that the substitution effected under such an agreement was or could be lawful. (*Moors* v. *Kidder*, 106 N. Y. 32.) The New York Factors' Act has no application to the present case, and the court below erred in

so holding. (*Covell* v. *Hill*, 6 N. Y. 374; *M. & T. Bank* v. *F. & M. Nat. Bank*, 60 N. Y. 40; *F. N. Bank* v. *Shaw*, 61 N. Y. 283; *F. & M. N. Bank* v. *Atkinson*, 74 N. Y. 587; *Moors* v. *Kidder*, 106 N. Y. 40; *Blydenstein* v. *N. Y. S. & T. Co.*, 15 C. C. A. 17; *Cartwright* v. *Wilmerding*, 24 N. Y. 521; *Soltau* v. *Gerdau*, 119 N. Y. 380; *Kinsey* v. *Leggett*, 71 N. Y. 387; *Howland* v. *Woodruff*, 60 N. Y. 73.) The Factors' Act, even if applicable, does not protect the plaintiff, as the plaintiff never advanced Lipman & Co. any value on the faith and credit of the defendant's bales, or of the warehouse receipt issued to it on December 15, 1892, and the court below erred in so holding. (*Coddington* v. *Bay*, 20 Johns. 637; *P. Ins. Co.* v. *Church*, 81 N. Y. 221; *Moore* v. *Ryder*, 61 N. Y. 441; *Aldridge* v. *Johnson*, 7 E. & B. 885; *Langton* v. *Higgins*, 4 H. & R. 402; *Hurd* v. *Cook*, 75 N. Y. 454; *Crofoot* v. *Bennett*, 2 N. Y. 258; *Kimberly* v. *Patchin*, 19 N. Y. 330; *Pleasants* v. *Randall*, 6 Rand. 473.)

*Franklin B. Lord* and *S. Sidney Smith* for Antony Gibbs & Sons et al., appellants. A banker in whose name goods are shipped, and who has taken the bills of lading in his own name, is the owner of those goods. (*Moors* v. *Kidder*, 106 N. Y. 32; *Drexel* v. *Pease*, 133 N. Y. 129; *F. & M. N. Bank* v. *Logan*, 74 N. Y. 568; *F. & M. N. Bank* v. *Atkinson*, 74 N. Y. 587; *F. & M. N. Bank* v. *Hazeltine*, 78 N. Y. 104; *Munroe* v. *Bonnano*, 31 Abb. [N. C.] 1; *Carter* v. *Arguimbo*, 31 Abb. [N. C.] 3; *English Bank of Rio de Janeiro* v. *Barr*, 31 Abb. [N. C.] 7.) An owner cannot be divested of his ownership in personal property simply by parting with the possession. (*Spraights* v. *Hawley*, 39 N. Y. 441; *Covill* v. *Hill*, 4 Den. 323; *Hazard* v. *Fiske*, 83 N. Y. 287; *Ballard* v. *Burgett*, 40 N. Y. 314; *Austin* v. *Dye*, 46 N. Y. 500; *Soltau* v. *Gerdau*, 119 N. Y. 397; *F. & M. N. Bank* v. *Logan*, 74 N. Y. 568; *Moors* v. *Kidder*, 34 Hun, 534; *F. N. Bank* v. *Shaw*, 61 N. Y. 283.) In this case neither Lipman & Co. nor their agent, Gutmann, pledged to the plaintiff appellants' goods. (*Moors* v. *Kidder*, 34 Hun, 536.)

The Factors' Act only operates by way of estoppel. (*Howland* v. *Woodruff*, 60 N. Y. 73 ; *Soltau* v. *Gerdau*, 119 N. Y. 380.) Lipman & Co. were neither agents nor factors of the appellants under the New York Factors' Act. (*F. N. Bank* v. *Shaw*, 61 N. Y. 283.) The Factors' Act is not available to the plaintiff as a defense. (*Spraights* v. *Hawley*, 39 N. Y. 441 ; *Soltau* v. *Gerdau*, 119 N. Y. 397 ; *Coddington* v. *Bay*, 20 Johns. 637 ; L. 1830, ch. 179, § 4 ; L. 1858, ch. 326 ; L. 1859, ch. 353 ; *P. Ins. Co.* v. *Church*, 81 N. Y. 221 ; *Moore* v. *Ryder*, 65 N. Y. 438 ; *Farwell* v. *I., etc., N. Bank*, 90 N. Y. 483.) The warehouse company were not defendants' agents for any purpose, nor could they make any arrangement by which their warehouse receipts of December, 1891, should be applicable to goods not yet received ; any such arrangement would be contrary to the Penal Code. (Penal Code, § 629 ; *Bell* v. *Leggett*, 7 N. Y. 176 ; *Otis* v. *Harrison*, 36 Barb. 210 ; *Devlin* v. *Brady*, 36 N. Y. 531 ; *Barr* v. *N. Y., L. E. & W. R. R. Co.*, 52 Hun, 555 ; *Griffith* v. *Wells*, 3 Den. 226 ; *Nellis* v. *Clark*, 4 Hill, 424 ; *Gardner* v. *McEwen*, 19 N. Y. 123 ; *Southard* v. *Benner*, 72 N. Y. 424.) In the absence of the plaintiffs showing that Lipman made some statement to them about ownership, on which they relied, and on the faith of which they parted with something, they cannot sustain their title to the fifteen Gibbs bales, or the twenty-two Hong Kong bales. (*Spraights* v. *Hawley*, 39 N. Y. 441 ; *F. Nat. Bank* v. *Shaw*, 61 N. Y. 283 ; *Soltau* v. *Gerdau*, 119 N. Y. 380.)

*William B. Hornblower* and *Howard A. Taylor* for respondent. The special title of the plaintiff as pledgee is paramount and superior to the secret titles of the appellants under the Factors' Act of this state. (L. 1830, ch. 179, § 3 ; *Cartwright* v. *Wilmerding*, 24 N. Y. 521 ; *Pegram* v. *Carson*, 10 Bosw. 505 ; 1 Daniel on Neg. Inst. § 827 ; *Hornblower* v. *Proud*, 2 B. & A. 327 ; Colebrooke on Col. Sec. §§ 15, 413, 414 ; *Clark* v. *Iselin*, 21 Wall. 360 ; *A. E. Nat. Bank* v. *N. Y. B. & P. Co.*, 148 N. Y. 698 ; *McNeil* v. *Hill*, 1 Woolw.

96; *Driggs* v. *Dean*, 87 Hun, 319; *Hoyt* v. *H. F. Ins. Co.*, 26 Hun, 416; 96 N. Y. 650; *N. C. Nat. Bank* v. *Lord*, 33 Hun, 561.) The trust receipts gave the appellants no title whatever. (*McFarland* v. *Wheeler*, 26 Wend. 467; *Black* v. *Bogert*, 65 N. Y. 601; *Bevan* v. *Waters*, 3 C. & P. 520; *Cross* v. *Page*, 31 Scot. L. R. 401; *Tod* v. *M. B. Co.*, 10 Sess. Cas. 1009; *Sewell* v. *Burdick*, L. R. [10 App. Cas.] 74.) The appellants have not given evidence of title if they had any. (*Stonebridge* v. *Perkins*, 141 N. Y. 1; *N. Y. S. & T. Co.* v. *S. G. & El. L. Co.*, 88 Hun, 569.) The chattel mortgage recording acts render the trust receipts void as to the plaintiff, the plaintiff being both a creditor of Lipman & Co. and a *bona fide* purchaser or pledgee of the bales. (L. 1833, ch. 279, §§ 1, 2; *Green* v. *Van Buskirk*, 7 Wall. 139; Whart. on Confl. of Laws, § 297; *Farmers' Bank* v. *Cowan*, 2 Abb. Ct. App. Dec. 88; *Robert* v. *Good*, 36 N. Y. 408; *Stilwell* v. *Carpenter*, 62 N. Y. 639; *Jarvis* v. *Sewall*, 40 Barb. 450; *Burt* v. *Place*, 4 Wend. 591; *Ritchie* v. *Putnam*, 13 Wend. 524; *Wines* v. *Mayor, etc.*, 70 N. Y. 613; *Dunford* v. *Weaver*, 84 N. Y. 445; *Dunham* v. *Townshend*, 118 N. Y. 286.) The trust receipts are void under the statutes against fraudulent conveyances. (*Hamilton* v. *Russell*, 1 Cranch, 310; Bump on Fraud. Conv. [3d. ed.] 270, 271; *Means* v. *Dowd*, 128 U. S. 273; *Potts* v. *Hart*, 99 N. Y. 168; *Hangen* v. *Hachemeister*, 114 N. Y. 566.) The trust company's title under the warehouse receipt of December 16, 1892, is superior to appellants' claims. (*Robbins* v. *Falconer*, 11 J. & S. 363; *McBurney* v. *Martin*, 6 Robt. 502; *Morange* v. *Waldron*, 6 Hun, 529; *Goodrich* v. *Dunbar*, 17 Barb. 644.) The principles of equity and common law protect the plaintiff. (*McNeil* v. *T. N. Bank*, 46 N. Y. 325; *Hern* v. *Nichols*, 1 Salk. 289; *Lickbarrow* v. *Mason*, 2 D. & E. 70; *Voorhis* v. *Olmstead*, 66 N. Y. 113.)

Vann, J. This action was brought to settle conflicting claims to the proceeds of a quantity of burlaps sold by the plaintiff under a warehouse receipt, pledged to secure a loan

of money, no question being raised by any defendant as to the propriety of an action in equity.   All the claimants derived title through the firm of Lipman & Co., manufacturers and importers, of Dundee, Scotland, who were represented in this country by one Ludwig Gutmann, as their general agent. Their business was to finish goods taken in the rough from the looms, put them in shape for the market and export them. The plaintiff claimed special title, as pledgee, to all the burlaps, consisting of two hundred bales, while the Hong Kong and Shanghai Banking Corporation, Antony Gibbs & Sons and Cotesworth & Powell, who alone are before us as appellants, claimed general title to twenty-two, fifteen and nine of said bales respectively.   Other claims were presented by different parties, but they are not now material, as the owners or representatives thereof have not appealed.

The question presented is, whether any of the appellants had any title to the bales claimed by them, and, if so, whether that title was good as against the plaintiff ?

The trial was before the court at Special Term, and, as the decision was general in form, all the facts warranted by the evidence and necessary to support the judgment are presumed to have been found. (*Amherst College* v. *Ritch*, 151 N. Y. 288, 320.)

Evidence was given tending to show that on the first of December, 1891, Lipman & Co. had on storage with the Terminal Warehouse Company in the city of New York eight hundred and one bales of burlaps, for five hundred of which negotiable warehouse receipts were subsequently given to that firm.   When their agent, Mr. Gutmann, first took out receipts of that kind he was asked by the representative of the warehouse company for which bales he wanted them, and whether he wanted them for any particular bales, and he said no, that he wanted no bale marks in the receipts, so that he could substitute other bales equal in kind and quality for those in storage whenever he liked.   After this conversation, the warehouse receipts were always made out as thus requested, without identifying marks, and substitutions were made from time to

time as bales were taken out of the bonded warehouse and sold until none of the bales on hand December 1, 1891, were in the warehouse on December 15, 1892, when the controversy before us arose.

The shipping documents accompanying each importation of Lipman & Company, and delivered by Mr. Gutmann to the custom house authorities, consisted of a bill of lading, a consular invoice and a warehouse entry. The bill of lading was made out to Lipman & Company as both consignor and consignee, except in the case of Antony Gibbs & Sons, who were themselves named as consignees, but they indorsed on the back of the instrument the words, " deliver to the order of Messrs. Lipman & Co., New York," and signed the same by their firm name. The consular invoice contained a declaration signed by a member of the firm of Lipman & Company to the effect that he was the manufacturer of the goods imported, and the United States consul at Dundee certified, among other things, that he was satisfied that the person making the declaration was the person he represented himself to be. The warehouse entry, dated at the custom house, New York, was headed, " Entry of merchandise imported," at a date named, " by Ludwig A. Gutmann," and to it was annexed the declaration of Gutmann, acknowledged before a notary public, that he was the ultimate consignee of the merchandise mentioned in the annexed entry and invoice, and that Lipman & Company were the owners thereof. All these papers, except the last, were mailed to Gutmann, who, on presentation thereof at the custom house, was enabled, in the usual course of business there, to take out the warehouse entry and obtain a permit to send the goods to a bonded warehouse, where they were stored subject to the order of Lipman & Company. The Terminal Warehouse Company was accustomed to issue to Lipman & Company two kinds of receipts for goods thus stored, one of which was non-negotiable and simply a memorandum that the goods were held on storage for Lipman & Company, and the other, which was the kind issued for the bales in question, was negotiable, and stated in

substance that the warehouse company had "received in Rositer stores No. 4 U. S. bonded on storage for account of Lipman & Company" so many bales of burlaps, "marks various * * * deliverable only upon return of this receipt and the payment of charges accrued thereon." The word "negotiable" was printed across the face of the receipt.

After December 1st, 1891, the exact date not clearly appearing, Lipman & Company borrowed $50,000 from the plaintiff upon their note at four months, in the usual form, with the added statement that said firm had pledged to the plaintiff as security five negotiable receipts of the Terminal Warehouse Company, dated December 1st, 1891, for one hundred bales of burlaps each, with authority to sell the same, "or any securities that may be substituted in lieu thereof," upon certain conditions duly named. Said warehouse receipts, which were in the form already described, were annexed to the note and delivered therewith, duly assigned by Lipman & Company in blank, at the time the loan was made, and at the same time the plaintiff learned from actual inspection in the warehouse that five hundred bales of burlaps were stored therein subject to the order of Lipman & Company. At the date of the loan Lipman & Company gave the plaintiff to understand that the goods represented by the receipts belonged to them, and nothing was at any time said to indicate that any one else had any claim upon them. The plaintiff had no information as to the financial standing of the borrowers, and the loan was made upon the strength of the facts thus stated.

On the 7th of September, 1892, said note was renewed upon the same security and in reliance on the same facts. Subsequently Lipman & Company paid $30,000 upon the note then held by the plaintiff, and three of the receipts were thereupon surrendered, so that on the 15th of December, 1892, when Lipman & Company failed, they still owed the plaintiff $20,000 on said note, to secure which it held the two remaining receipts for one hundred bales each, running to Lipman & Company and indorsed in blank, and upon the day last named it delivered to the warehouse company said two receipts and received

in exchange one receipt for two hundred bales made out in its own name.   There were just two hundred bales then on hand. Upon the strength of this receipt, and pursuant to the terms of the note, the plaintiff took possession of the two hundred bales in question and sold them on the 28th of January, 1893, for the sum of $22,823.84.

Nothing was said to the plaintiff at any time by any person about substituting new bales for those covered by the original receipts, but in fact Lipman & Company took out old and put in new bales almost daily.   Mr. Gutmann, who was well quali- fied to speak upon the subject from actual observation, testi- fied that all the bales of burlaps were substantially equivalent in value, and there was no evidence to the contrary.

The title of the appellants rests upon certain trust receipts, so called, signed by Lipman & Company through Mr. Gut- mann, dated at New York, to the effect that said firm had received from the appellants respectively a bill of lading for a certain number of bales, which, as the receipt further stated, " we hereby agree to hold as their property and to keep insured against fire    *    *    *    and on sale of said goods, or any portion thereof, we further bind ourselves to remit *    *    *    the proceeds thereof as soon as received ; the inten- tion of the undersigned in giving this trust receipt being to protect and preserve unimpaired the title and interest of " the appellant named " in said goods, and to act in the premises entirely as their trustees ; it being further understood that on the proceeds of the said goods being handed over to " such appellant " the trust which has been hereby created shall thereupon cease."   In the case of Cotesworth & Powell, there was also evidence showing a large sum due them from Lip- man & Company on a balance of account and certain corrre- spondence was read showing that Cotesworth & Powell had agreed to lend money to Lipman & Company on the security of such trust receipts.   All this evidence was wanting in the case of the two other appellants except that each held a trust receipt differing somewhat in phraseology but similar in legal effect to that held by Cotesworth & Powell.   The receipt

given to Antony Gibbs & Sons contained a promise on the part of Lipman & Company that " on the sale of said goods or any portion thereof " they would remit to Gibbs & Sons the proceeds as soon as received. The receipts given to the Hong Kong & Shanghai Banking Association did not contain the words " on sale of said goods or any portion thereof," but contained a promise upon the part of the receiptors " to deliver to the bank's agent in New York the warehouse receipt for the same," together with a fire policy and a custom house withdrawal entry. Lipman & Company did not carry out the promises made by them in the receipts, nor does it appear that any of the appellants ever made any request to have them carried out.

The evidence showed that when Lipman & Company shipped certain goods to this country they transmitted the bills of lading and consular invoices to one of the appellants, who then sent them to Gutmann for Lipman & Company, with a blank trust receipt to be signed. Mr. Gutmann was accustomed to sign the trust receipt in the name of his firm and return it, holding possession, however, of the bills of lading and the consular invoices, which he presented at the custom house, and without which no one could have obtained the goods, and received the usual permit to store. Lipman & Company were thus enabled to obtain warehouse receipts and to pledge or dispose of the same. The plaintiffs never saw the bills of lading or consular invoices so furnished to Lipman & Company or their agent. Lipman & Company owned the goods before the loans were made to them by the appellants respectively and before the bills of lading and consular invoices were delivered to the appellants, who did not buy the goods themselves upon the request of Lipman & Company, or otherwise, and never had any interest therein except as stated. The receipt for two hundred bales given by the warehouse company to the plaintiff on the 15th of December, 1892, embraced all the bales then stored to the order of Lipman & Company. A part of these bales were those covered by the trust receipts of the appellants.

This is the history of the bales in question which came into the lawful possession of Gutmann, as agent of Lipman & Company, through the usual evidence of title furnished by the appellants themselves. By means of the bills of lading and consular invoices which they delivered to Lipman & Company with the intention, as the Special Term is presumed to have found, that the firm should obtain possession of the goods and sell them, they took possession of them in the usual and legal way, and stored them with the warehouse company, after the date of the last renewal of the note held by the plaintiff. The trust receipts were a secret arrangement between the appellants and Lipman & Company, known only to themselves, the effect of which, as between themselves, assuming that they truthfully express the actual transaction, it is unnecessary to decide. There is some reason to believe that the appellants were simply pledgees out of possession, and hence with no title. As to third persons the naked receipts, without other proof, such as the making of a loan or of advances, were slender evidence of title, and although the attention of the appellants was repeatedly called to this defect during the trial, no effort was made to remedy it, except to some extent by Cotesworth & Powell, as already stated.

Independent of the question of substitution, which will be considered later, these facts bring the case directly within the provisions of the Factors' Act, which declares under what circumstances a factor or agent shall be deemed the true owner as to third persons acting in good faith. (L. 1830, ch. 179.) That act makes "every factor or other agent, intrusted with the possession of any bill of lading, custom house permit or warehouse keeper's receipt, for the delivery of any" merchandise, or if he has not the documentary evidence of title, if he is "intrusted with the possession of any merchandise for the purpose of sale, or as a security for any advances to be made or obtained thereon * * * the true owner thereof, so far as to give validity to any contract made by such agent with any other person for the sale or disposition of the whole or any part of such merchandise, for any money advanced or

negotiable instrument or other obligation in writing given by such other person upon the faith thereof." (Id. § 3.) By the next section it is declared that the holder of an antecedent debt who accepts or takes merchandise in deposit from any such agent as security therefor, shall not acquire thereby any right other than was possessed by the agent at the time of the deposit. Subsequent sections protect the true owner to a certain extent by enabling him to redeem the merchandise when pledged, and to recover any balance upon the sale thereof. They prohibit those to whom merchandise may be committed for transportation or storage only, from selling or hypothecating the same, and finally make it a misdemeanor for any factor or agent to sell, pledge or dispose of any merchandise or documentary evidence of title for his own benefit contrary to good faith and with intent to defraud the true owner. (Id. § 7.)

While Lipman & Company are called trustees in the receipts given by them to the appellants, we think they were agents within the meaning of the Factors' Act. Two of the receipts authorize a sale by Lipman & Company, while the third fairly contemplates a sale by the use of the words " said merchandise or the proceeds thereof." This also appears from evidence outside of the receipts. Lipman & Company were " intrusted with the possession of " the bills of lading and the consular invoices, to which formal declarations, duly acknowledged, were attached, stating that they were the owners of the goods. Having the lawful evidence of title, furnished by the appellants to enable them to sell the goods and remit the proceeds, they became agents for that purpose. Their authorized action was that of agents and was of the kind contemplated by the Factors' Act as ordinarily done by agents. Calling them trustees does not make them trustees as to third persons, with no notice of the secret agreement. The object of the statute was to protect innocent persons who deal in reliance upon apparent ownership, resting upon possession either of the merchandise itself or documentary evidence of ownership. (*Cartwright* v. *Wilmerding,* 24 N. Y. 521; *Pegram* v. *Carson,* 10 Bos. 505; Meacham on Agency, § 995.)

We have carefully examined the authorities relied upon by the appellants, but find nothing in conflict with these views.

The remaining question relates to the substitution of bales. The appellants claim that the plaintiff never advanced any money on account of their bales, and that it never at the request of Lipman & Company surrendered any goods pledged to it in substitution for the bales belonging to the appellants. This is true, but the Special Term is presumed to have found, according to the evidence, that prior to the original loan Lipman & Company had established with the bonded warehouse a course of dealing, by which the warehouse company issued negotiable open receipts to them for certain specified quantities of burlaps without specifying any particular bales ; that the warehouse company held against such open receipts as many bales as they called for, always retaining a sufficient quantity to cover all open receipts outstanding, the holders of which could at any time call upon the warehouse for the quantities specified therein ; that at the date of the failure of Lipman & Company, by the process of transfer in the warehouse, the bales consigned by the appellants to Lipman & Company were held by the warehouse company to satisfy the open receipts that it had given to Lipman & Company, and which were then held by the plaintiff.

The legal effect of the open warehouse receipt was an undertaking by the warehouse company to deliver the number of bales specified therein, stored with it by Lipman & Company, to that firm or their assigns upon the return of the receipt. It hence was under an obligation to keep on hand the number of bales called for by such receipt as long as it was outstanding. It did not agree to deliver any particular bales, for the receipt was open and contained no identifying marks. If it delivered the number of bales stored with it by Lipman & Company, called for by the receipt, upon the return thereof, it satisfied its engagement. According to the uncontradicted evidence all the bales were practically of the same value, and when the plaintiff demanded two hundred bales, under the open negotiable receipts, pledged to it by Lipman

& Company, the warehouse company was under obligation, as bailee for the plaintiff, to deliver the number of bales called for, and if it did so its contract with the plaintiff as assignee of the open receipt was fully performed. Hence, the warehouse company, being under this obligation, was in the position, when it surrendered the original two hundred bales to Lipman & Company, or upon their order, of parting with value under the agreement in force between them as to the substitution of new bales in the place of old ones withdrawn. Their liability to account to the plaintiff for two hundred bales was a good consideration for the substitution of two hundred other bales, of like constituent units, upon the surrender of the former. This is made very plain by the opinion of the Circuit Court of Appeals, written in a case brought by one Blydenstein against this plaintiff as defendant to recover part of the proceeds of the two hundred bales in question upon a claim similar to those asserted by the appellants in this action. (*Blydenstein* v. *N. Y. Security & Trust Co.*, 67 Fed. Rep. 469.) We close our review by quoting from that opinion as follows : " The trust company, therefore, on September 7, 1892, obtained a valid lien on 500 bales of Lipman & Co.'s burlaps then stored in the warehouse. Thereupon the warehouse company became its bailee, and held the bales for it. (*Gibson* v. *Stevens*, 8 How. [U. S.] 384.) Whenever thereafter Lipman & Co. asked to substitute other similar goods of their own for those originally delivered as collateral, the surrender of an equal quantity of the original security of equal value would be a valuable consideration for the giving of the new security. The pledgee as to the latter would be a holder for value, and the exchange would have no effect upon the rights of the pledgee as founded upon the original contract. (Colebrooke on Col. Sec. § 15 ; *Clark* v. *Iselin*, 21 Wall. 360.) The same rule should apply where the goods offered in substitution and in exchange, for which goods already pledged are surrendered, are such as have been intrusted to the factor in the manner provided for by the Factors' Act, when the surrender is made upon the faith of the factor's pos-

session. The contract for disposition of such goods is not for 'advances of money,' but it would be too narrow a construction of the state statute, which, according to the decisions of the state courts, should be liberally construed, to hold that one who parts with money's worth in the form of valuable property is deprived of its protection because he did not first transform such property into cash. When, therefore, Lipman & Co., after having deposited the 38 bales in warehouse, subject to their order, called upon the warehouse company to deliver 38 bales already covered by the pledged receipts, and with no older free bales than these to substitute in their place, they did in fact apply for an exchange of part of the security collateral to their loan, thus offering to pledge the new 38 bales if the old ones were delivered to them. The offer was accepted, and, on the faith of their possession of the bales which they thus offered to pledge, the older bales were given up to them. This was a valuable consideration, parted with in good faith, and entitles the person paying it to the protection of the Factors' Act, as against the plaintiffs (here the defendants), who had intrusted Lipman & Co. with the possession of the goods. The trust company, on December 15, 1892, had a valid lien on all of the 200 bales remaining in the warehouse under the two uncanceled open receipts of December 1, 1891, and they certainly did not lose such lien by returning the original receipts to the warehouse and accepting in exchange a single one in their own name for the full account."

We think the judgment should be affirmed, with costs.

All concur, except Parker, Ch. J., not sitting, and Gray, J., absent.

Judgment affirmed.