OSGOOD BRADLEY CAR COMPANY *vs.* STANDARD STEEL MOTOR CAR COMPANY & another.

Suffolk.    December 2, 1926.— April 21, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Replevin. Factor's Act. Sale. Trust,* Trust receipt. *Pledge.*

A manufacturer of automobiles shipped automobiles to a dealer by order bills of lading running to the manufacturer. After, with the consent of the manufacturer, the dealer had taken possession of the automobiles, he delivered to a trust company for advances made by it a bill of sale of the automobiles and a trust receipt by the terms of which, the dealer agreed to hold the pledged cars in trust for the trust company as its

property, with power to sell the same for its account and pay over to it the proceeds of any such sale to apply in payment of loans made by it to the dealer. *Held,* that

(1) As to the automobiles the dealer was a factor or consignee within the provisions of G. L. c. 104;

(2) Under G. L. c. 104, § 4, the trust company had a right to the possession of the automobiles which was superior to the right of one to whom the manufacturer, after the delivery of the bill of sale and the trust receipt by the dealer, had transferred his title, unless it was precluded from recovery for the reason that the cars were so pledged for an antecedent debt due from the dealer under § 5 of the statute;

(3) The mere substitution, for one of the cars covered by the original bill of sale, of another held by the dealer under the same conditions, as security for the same debt, the notes or other evidences of indebtedness held by the trust company not being replaced by new notes or obligations, was not a pledge for an antecedent debt under § 5 of the statute.

REPLEVIN, of five motor vehicles described in the writ as "Standard Eight Four Passenger Touring Car No. J4649; Standard Eight Seven Passenger Touring Car No. J4650; Standard Eight Seven Passenger Touring Car No. J4759; Standard Eight Coupe Car No. J4616; Standard Eight Coupe Car No. J4739." Writ dated February 21, 1922.

The State Street Trust Company was admitted as a party defendant. The action was heard in the Superior Court by *Brown,* J., without a jury. Material facts found and rulings made by the judge are stated in the opinion. There was a finding for the plaintiff and an assessment of damages in the sum of $1. The State Street Trust Company alleged exceptions.

*A. B. Carey,* for the defendant State Street Trust Company.

*F. L. Norton, (J. F. Bacon* with him,) for the plaintiff.

CROSBY, J. This is an action of replevin brought by the Osgood Bradley Car Company (hereinafter called the plaintiff), a Massachusetts corporation engaged in the manufacture of steam and electric cars, against the Standard Steel Motor Car Company (hereinafter called the Motor Car Company), a Massachusetts corporation engaged in selling automobiles manufactured by the Standard Steel Car Company (hereinafter called the Standard Company) manufacturers of automobiles in Pittsburgh, Pennsylvania. The State Street Trust Company (hereinafter called the Trust Company) has been admitted as a party defendant. The

rights of the parties in five automobiles are involved. The case was heard by a judge of the Superior Court sitting without a jury. He found for the plaintiff, and the case comes here on exceptions of the defendant Trust Company to the admission of evidence and to certain findings and rulings by the trial judge.

There was evidence tending to show that the Standard Company in August and September, 1920, shipped to the Motor Car Company by order bills of lading running to the Standard Company, or order, four of the five automobiles in question, namely: J4649, J4650, J4739 and J4616. They were billed to the Motor Car Company and invoices were sent to it. Drafts covering the amounts due on the cars were forwarded with the bills of lading by a bank in Pittsburgh to the defendant Trust Company, and thereafter the cars were placed in storage and warehouse receipts were given to the Motor Car Company in place of the bills of lading. In February, 1921, the cars were taken from the warehouse to the premises of the Motor Car Company, where new engines were installed; and they remained in possession of the Motor Car Company with the consent of the Standard Company. Each of these cars was originally designated by the letter "I" followed by certain numbers; after they came into possession of the Motor Car Company and the engines were changed, they were designated by the numbers hereinabove set forth and are so described in the writ. On May 7, 1921, cars J4649 and J4650, with seven other cars, were pledged to the defendant Trust Company; and on the same date there was executed and delivered by the Motor Car Company to the Trust Company a bill of sale covering the nine cars and a trust receipt describing them.

On June 13, 1921, the Standard Company, without notice to the Motor Car Company, wrote the plaintiff that it had sold to it eight cars, designated by numbers which included J4649, J4650 and J4616, in possession of the Motor Car Company, and directed the plaintiff to notify that company that they were the property of the plaintiff on consignment and were to be sold by the Motor Car Company for the plaintiff's account. On June 15, 1921, the plaintiff wrote

to the general manager of the Motor Car Company that it had purchased from the Standard Company eight automobiles in storage on the show floor of the Motor Car Company and that "These eight cars now being the property of the Osgood Bradley Car Company will be left in the possession of the Standard Steel Motor Car Company, of Boston, as property of the Osgood Bradley Car Company on consignment, with the understanding that they are to be sold by the Standard Steel Motor Car Company, for the account of the Osgood Bradley Car Company." The letter described the cars by numbers which included J4649, J4650 and J4616. Invoices were sent by the Standard Company to the plaintiff covering these three cars, all of which were replevied. On the same date the Standard Company wrote the plaintiff that the plaintiff had purchased the eight cars and directed that they should be billed to the Motor Car Company on consignment.

On August 8, 1921, the Motor Car Company executed and delivered to the Trust Company a bill of sale of car J4739, and a trust receipt for the same car. This car was pledged in substitution for another car previously pledged as security for the same loan. On January 25, 1922, the Motor Car Company executed and delivered to the Trust Company a bill of sale of certain cars including J4649, J4650 and J4739, and a trust receipt covering the same cars.

Car J4759 (with two other cars not here involved) was also pledged to the Trust Company in substitution for three other cars previously pledged. It had been delivered to the Motor Car Company in September, 1921, for sale to a customer who refused to purchase it, and thereafter it remained in possession of the Motor Car Company for sale until it was replevied in the present action. It appears by letter dated December 22, 1921, from the Standard Company to the plaintiff, that this car was billed to the plaintiff on that date with the request that it render a bill against the Motor Car Company "On Consignment (but not on conditional sale)."

Whatever interest the plaintiff has in the automobiles in question is derived from the Standard Company which manufactured them. The four cars, namely J4649, J4650, J4616 and J4739, were shipped by the manufacturer to the

Motor Car Company under three bills of lading. The fifth car, J4759, was sent to the Motor Car Company before December 22, 1921. The Trust Company took formal possession of all these cars except J4616, and then redelivered them to the Motor Car Company upon delivery of its trust receipts. The judge rightly found that car number J4616 never was pledged to the Trust Company. The trust receipts are in substantially the same form, and by their terms the Motor Car Company agreed to hold the pledged cars in trust for the Trust Company as its property, with power to sell the same for its account and pay over to it the proceeds of any such sale to apply in payment of loans made by it to the Motor Car Company. After the plaintiff purchased the cars from the Standard Company they remained in possession of the Motor Car Company, subject to the trust receipts; and it properly may be inferred that the latter company had the same authority to deal with them as existed before the sale to the plaintiff.

The writ in this action is dated February 21, 1922, which is after the advances had been made and the trust receipts taken by the Trust Company. It is plain that as to all cars described in the writ, except J4616, the Motor Car Company was a factor or consignee within the terms of G. L. c. 104, and the trial judge, in effect, so found and ruled by giving the twenty-fifth request of the Trust Company, although he refused to give its sixth and seventh requests. While he gave the eighth request as qualified by him, he specifically found that the Trust Company made loans in good faith and with probable cause to believe that the Motor Car Company had authority to pledge the cars to secure advances. The cars so pledged were J4739, J4649, and J4650, delivered under the original shipment, and J4759, delivered afterward for the purpose of sale to a particular customer. This last mentioned car was billed to the plaintiff by the Standard Company, with instructions to notify the Motor Car Company that it was held on consignment from the plaintiff; but such notice was never given to the Motor Car Company by either the plaintiff or the Standard Company.

It is the contention of the plaintiff that the Motor Car

Company in these circumstances had no authority to sell this car but could only hold it subject to the order of the Standard Company.   We cannot agree with this contention. G. L. c. 104, § 4, provides that "If a consignee or factor, having possession of merchandise . . . with authority to sell said merchandise, deposits or pledges such merchandise . . . with any other person as security for money . . . advanced . . . such other person, if he makes such loan . . . in good faith and with probable cause to believe that the agent making the deposit or pledge had authority so to do and was not acting fraudulently against the owner . . . shall . . . acquire the same interest in and authority over such merchandise . . . as he would have acquired if the agent had been the actual owner thereof."   Under this statute the Trust Company as holder of the trust receipts, having made the advances in good faith with probable cause to believe that the Motor Car Company in making the pledge had the authority to do so and was not acting fraudulently, is entitled to the possession of the cars, unless it is precluded from recovery for the reason that the cars were so pledged for an antecedent debt due from the consignee.   This is equally true as to the pledge of J4759 above referred to.   After the Motor Car Company failed to sell it to the prospective purchaser, it remained in its possession, and on January 25, 1922, was pledged to the Trust Company in substitution for another car previously pledged.   The general course of dealing between the parties was such that the Motor Car Company could rightly assume that, after the customer had refused to purchase, it was then held under consignment with authority to sell or pledge the same.   It follows that as to all the cars described in the writ, except J4616, the Motor Car Company was a factor or consignee within the terms of G. L. c. 104.   *International Trust Co.* v. *Webster National Bank,* 258 Mass. 17.   *Cartwright* v. *Wilmerding,* 24 N. Y. 521. *Schmidt* v. *Simpson,* 139 App. Div. (N. Y.) 509.   *Oakland Manuf. Co.* v. *F. C. Linde Co.* 162 App. Div. (N. Y.) 543. *Clark* v. *Iselin,* 21 Wall. 360.

Although cars J4649 and J4650 were included with other cars in the trust receipt of May 7, 1921, and were also in-

cluded in the trust receipt of January 25, 1922, other cars were not substituted for either of them, and the trial judge so found.

As to cars numbered J4739 and J4759 the judge made the following findings: "The court specifically finds that on August 8, 1921, the defendant Standard Steel Motor Car Company paid $1,000 to the defendant State Street Trust Company on account of a preëxisting loan, and in addition car number J4739 was pledged to the said State Street Trust Company in substitution for another car previously pledged, as collateral security, in part, for the same loan . . . that on January 25, 1922, car number J4759 was, with two other cars not involved herein, pledged by the said Standard Steel Motor Car Company to the said State Street Trust Company in substitution for three cars previously pledged as security for a preëxisting loan, and that on the same day cars J4649, J4650 and J4739 were included in the same pledge, though not in substitution for other cars."

The judge makes no reference to the fact that cars J4649 and J4650 had been pledged to the Trust Company on May 7, 1921, and that on the same day they had been returned to the Motor Car Company on trust receipt in the usual course of dealing between the parties. The pledge of these and other cars on January 25, 1922, so far as appears, was not in substitution of the previous pledge of May 7, 1921, but was taken as additional security and does not affect the rights of the Trust Company under the original pledge.

The question remains whether, as the plaintiff contends, the Trust Company is precluded from holding cars J4739 and J4759 on the ground that, having been substituted for other cars, they were pledged for an antecedent debt as those words are used in G. L. c. 104, § 5. Although this statute has not been construed by this court, we are of opinion that it is not applicable to the facts in the case at bar. There can be no doubt that the new collateral, substituted upon the release of the original collateral, was founded upon a valid consideration. *Entin* v. *Evans*, 235 Mass. 43. The pledgee as to the new collateral would be a holder for value. The substituted cars did not secure an antecedent debt; it was the same

debt, and did not affect the rights of the pledgee founded upon the original pledge. It is to be assumed, and no contention is made to the contrary, that, when the cars in question were substituted for others, the notes or other evidences of indebtedness held by the Trust Company were not replaced by new notes or obligations. In short, no new indebtedness was created by the substitution of the cars. In the opinion of a majority of the court the exhibits, together with the evidence, viewed in the light most favorable to the plaintiff, clearly show that none of the cars in suit were pledged for an antecedent debt. The substituted cars were security for the same obligation as had previously existed, no other debt being thereby secured. It follows that, as the cars were not pledged by the consignee for an antecedent debt, the rights of the Trust Company are not affected by G. L. c. 104, § 5. *International Trust Co.* v. *Webster National Bank, supra. Blydenstein* v. *New York Security & Trust Co.* 67 Fed. Rep. 469, 480. *New York Security & Trust Co.* v. *Lipman,* 157 N. Y. 551, 563, 564. See also *Voss* v. *Chamberlain,* 139 Iowa, 569, 573.

The factors' act in New York (Laws of N. Y. 1830, c. 179, § 4; Vol. 5, N. Y. Consolidated Laws annotated, page 6196) contains a provision similar to § 5 of our own act. In *New York Security & Trust Co.* v. *Lipman,* 91 Hun, 554 (affirmed in 157 N. Y. 551), the question was presented whether the substitution of other merchandise constituted a pledge for an antecedent debt. In that case the court said, at page 565: "The bales claimed by the appellants were not taken by the trust company as security for an antecedent debt, but in consideration of the surrender of other bales on the faith of which the loan had been made by the trust company. There was, therefore, a present parting of value independent of the antecedent debt."

In the case at bar the judge found for the plaintiff and assessed damages in the sum of $1. Car J4616 was never pledged to the Trust Company, and the judge so found. As to cars J4739 and J4759, the judge found that they were pledged in substitution for other cars previously pledged and, in substance, ruled that they were so pledged for antecedent

debts. As neither of these cars was pledged for an antecedent debt, the rulings with reference to them were erroneous. The finding in the fourth paragraph of the "findings and rulings" by the judge that car J4759 was never consigned to the Motor Car Company cannot be sustained upon the evidence. As to the remaining cars pledged to the Trust Company, J4649 and J4650, there is no evidence to show that they were ever pledged in substitution for other cars, and, upon the entire evidence and the exhibits, the Trust Company is entitled to the possession of them. The finding and ruling as to them in favor of the plaintiff are erroneous. As one of the cars was not pledged and as the rulings requested by the Trust Company related to all of them the rulings could not rightly have been given.

The finding as to car J4616 is to stand. The exceptions to the findings and rulings as to the remaining four cars are sustained.

*So ordered.*