## BOSTON NAT. BANK v. EARLY.

(Circuit Court of Appeals, First Circuit. March 5, 1927.)

No. 2009.

1. Bankruptcy ⚖=467(4)—District Court finding of fact, sustained by evidence, is not subject to review.

Finding of District Court on question of fact is not subject to review, if sustained by substantial evidence.

2. Bankruptcy ⚖=166(4)—Whether creditor, receiving property within four months of bankruptcy petition, has cause to believe transferror is insolvent, is determinable from conditions of case.

Whether creditor, who receives transfer of bankrupt's property within four months before filing petition, has reasonable cause to believe transferror is insolvent, and that transfer gives him larger percentage of assets than other creditors, must be determined from condition of each case, including proved facts and reasonable inferences therefrom.

3. Bankruptcy ⚖=166(4)—Whether creditor, receiving transfer of bankrupt's property within four months, had cause to believe bankrupt was insolvent, is determinable according to belief of reasonably prudent man.

Whether creditor, receiving transfer of bankrupt's property within four months of petition, had reasonable cause to believe transferror was insolvent, is determinable according to whether facts surrounding and attending transfer were such as to cause reasonably prudent man to believe bankrupt was insolvent when transfer was made.

4. Bankruptcy ⚖=303(4)—Evidence held to sustain finding that bankrupt's transfer to creditor was preference, and voidable as such (Bankruptcy Act, § 60b [Comp. St. § 9644]).

Evidence *held* to sustain finding that transfer by bankrupt within four months of filing petition was a preference, and voidable under Bankruptcy Act, § 60b (Comp. St. § 9644), in that creditor receiving transfer had reasonable cause to believe that such was its effect.

5. Bankruptcy ⚖=303(2)—Bankrupt's books, and statements of expert accountant in regard thereto, held admissible to show bankrupt's insolvency at time of alleged preference.

Bankrupt's books, and statements of expert accountant in regard thereto, *held* admissible in suit by trustee to recover alleged preference, for purpose of showing whether bankrupt was insolvent or not.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit by Frederick B. Early, as trustee in bankruptcy, against the Boston National Bank. Decree for plaintiff, and defendant appeals. Affirmed.

Albert A. Ginzberg, of Boston, Mass. (A. Murray Ginzberg, of Boston, Mass., on the brief), for appellant.

Robert A. B. Cook, of Boston, Mass. (John J. Hartigan, James H. Duffin, and Phipps, Durgin & Cook, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

JOHNSON, Circuit Judge. This is an appeal from a decree of the United States District Court for the District of Massachusetts, holding that a transfer made by the bankrupt within four months of the filing of a petition in bankruptcy was a preference, and therefore voidable under section 60b of the Bankruptcy Act (Comp. St. § 9644). There is no dispute about the facts, but only as to the reasonable inferences that can be drawn from them.

The bankrupt, on June 30, 1922, obtained from the bank a loan of $7,500, for which it gave two notes, one for $3,500, and the other for $4,000, and furnished the bank with a statement of its financial condition. These notes were renewed from time to time as they fell due.

On August 5, 1924, the bank received a statement of the bankrupt's financial condition on May 31, 1924, showing upon its face gross assets in the sum of $93,167.83 and gross liabilities of $50,559.66. In this statement the bankrupt agreed to keep at all times on deposit at the bank at least 20 per cent. of the amount loaned to it.

On September 30, 1924, the last renewal of the note for $3,500 matured. The attention of the bankrupt was at that time called by the president of the bank to the condition of its deposits at the bank, and was told that, unless the bankrupt company could keep up a proper balance, the bank preferred that the note be paid and the account taken elsewhere. At the urgent request of the president of the bankrupt company, and his assurances that the balances would be kept in conformity with

requirements of the bank, the note was renewed for the further term of three months without requiring security.

On October 7th the bankrupt's note of $4,000 fell due. The balances carried by the bankrupt had not been improved as requested, and the president of the bank insisted upon its payment. The president of the bankrupt company stated that business conditions were such that merchandise was not moving very rapidly; that his company had ample merchandise on hand, and offered to give merchandise security.

It is also in evidence that the bankrupt's account had not been satisfactory, and at different times within a period of 10 days or so prior to October 7, 1924, the bank had held the company's checks, drawn on insufficient funds, until adequate deposits could be made; that on October 7, 1924, several checks were presented to the bank through the clearing house for payment, and the bank had determined not to pay these checks, unless satisfactory arrangements were made for the payment or security of the note then maturing.

The bankrupt was engaged in the sale and distribution of meats and provisions by wholesale. It is alleged in the complaint and admitted in the answer that a quantity of merchandise, consisting of casings, beef middlings, and briskets, of the alleged value of $5,000, was transferred to the defendant as security for the loans then owed by the bankrupt to the bank, and that the bank realized from its sale the sum of $4,899.23.

The company was adjudged a bankrupt November 4, 1924, and this suit was brought by the trustee in bankruptcy to recover the amount realized by the bank from the sale of such merchandise. The District Court has found that the transfer to the bank was a preference, and that the bank had reasonable cause to believe that this was its effect.

[1] The substantial question raised by the assignment of errors is whether the defendant, under all the circumstances, had reasonable cause to believe that the bankrupt was insolvent when it made the transfer, and that the effect of the same would be to enable the bank to obtain a larger percentage of its claim than other creditors of the same class. By its decree the District Court has impliedly found against the bank upon both these propositions, and this finding, being one of fact, is not subject to review if sustained by any substantial evidence.

[2] Whether a creditor who receives a transfer of a bankrupt's property within four months of the filing of the petition in bankruptcy has reasonable cause to believe that the transferer is insolvent, and that such transfer would enable him to obtain a larger percentage of the assets than other creditors of the same class, must be determined from the conditions in each case, including the proven facts and all reasonable inferences to be drawn from them.

[3, 4] The decided cases furnish no certain and unerring rule by which this question may be determined. The rule laid down in Grant v. National Bank, 97 U. S. 80, 24 L. Ed. 971, has in some cases been given a broader application than warranted by it. The rule to be deduced from all these decisions is whether the facts surrounding and attending the transfer alleged to be voidable were such as to cause a reasonably prudent man to believe that the bankrupt was insolvent when it was made, or were such as to put him on inquiry touching the solvency of the debtor, which inquiry would have disclosed insolvency. But the application of this rule to widely varying conditions and facts has led to some diversity of opinion in the courts, so that the citation of authorities is not very helpful. We think the decree of the District Court is fully sustained by the evidence in this case.

The president of the bank knew upon September 30, 1924, that the balances of the bankrupt were far below those required. The original loan had been carried for more than two years, the notes given for it being renewed from time to time, and upon this date the bank was unwilling to renew the note of $3,500, which then fell due, without assurances that larger balances would be maintained by the bankrupt.

The statement of the bankrupt's account, which was introduced in evidence, shows that, instead of increasing its deposits, they decreased until, on October 7th, when the note of $4,000 fell due, this statement showed a loanable balance of only $60, and one of $90 during the month of September. Checks had been presented, which the bank had been compelled to hold until deposits should be made to meet them, and on October 7th, when the $4,000 note fell due, several checks had come to the bank from the clearing house, which it was holding as overdrafts, and the bankrupt was told that, unless some satisfactory disposition was made of the note, these checks would be returned. In order to secure payment of the checks and a renewal of the note, the bankrupt made the transfer in question to the bank. This in itself was of such an unusual character, covering perishable goods, as to put the bank upon inquiry, taken in con-

nection with the facts disclosed by the balances maintained by the bankrupt and the drawing of checks when there were not sufficient funds to meet them. Such an inquiry would have disclosed that the company was bankrupt, as shown by the testimony of the expert who examined its books, which was that the books had been "juggled" to provide the figures contained in the financial statement given to the bank and various items of assets "for which a physical inventory existed with valuations which had been substantially marked up"; that among the assets of the company were notes of one or more of its officers; that he had checked the sales of the company, and that between May 31 and November 4, 1924, the date of bankruptcy, a loss of $50,000 had occurred, as shown by the books.

While the record does not disclose what part of the whole stock of merchandise was transferred to the bank, a reasonable inference to be drawn from the financial statement rendered, and from the testimony of the expert accountant, is that it was a substantial part. That a going concern should be willing to transfer merchandise, constituting part of its stock, to a bank in payment of a loan, was of itself sufficient notice to put the bank upon inquiry as to its condition.

[5] It is assigned as error that the court admitted the testimony of the expert as to the condition of the books of the company on May 31, 1924, and also that he was allowed to express his opinion as to the solvency of the company on October 7, 1924. The books of the bankrupt were admissible for the purpose of showing whether it was insolvent or not, and also the statements of the expert accountant in regard to them; but the probative force of this testimony and of the books was for the court.

The testimony of the expert to which exception was taken was that, while he had not conducted an examination of the books, papers, and records as of October 7, 1924, in his opinion, the company was then without sufficient assets to meet its debts. The testimony of the witness as to the condition of the books and what was shown by them was competent.

It is also assigned as error that a witness was allowed to testify as to rumors heard by him in regard to the company on or about October 7, 1924, but there was no evidence that these were communicated to the bank. What these rumors were does not appear, and we are unable to determine whether the testimony was prejudicial to the bank or not.

The decree of the District Court is affirmed, with costs to the trustee in bankruptcy.