**BUCHANAN STATE BANK v. DE GROOT.**

No. 5537.

Circuit Court of Appeals, Sixth Circuit.
April 8, 1930.

C. H. Kavanagh and Stuart B. White, both of Niles, Mich. (Stuart B. White, of Niles, Mich., on the brief), for appellant.

Francis L. Williams, of Grand Rapids, Mich. (on the brief), for appellee.

Before HICKS and HICKENLOOPER, Circuit Judges, and WEST, District Judge.

WEST, District Judge.

J. R. Ross, the bankrupt, was indebted to the appellant, Buchanan State Bank, on three notes amounting to $1,550. Of these, one for $750 was payable to and indorsed by one Miller, who discounted it with the bank of which he was a director. On April 9, 1928, Ross gave the bank a new note for $1,600, in consideration of which it surrendered his old notes and paid him $24 in cash, the difference between the new and old obligations with accrued interest; and all the old notes, including the one indorsed by Miller, were canceled and surrendered.

On March 30, 1928, Paul Caruso purchased a confectionery store in Buchanan from Ross for $6,000, half cash and half evidenced by the purchaser's note payable $100 per month, beginning May 1, 1928, and secured by chattel mortgage on the stock and fixtures. On April 9, 1928, in connection with giving the $1,600 note to the bank, Ross assigned the Caruso note and mortgage to the appellant to secure his indebtedness generally; and on July 28th following, filed a voluntary petition in bankruptcy and was adjudicated a bankrupt.

The bank's claim for the unpaid balance on this $1,600 note was contested before the referee on the ground that the creditor had secured an unlawful preference as defined by section 60a of the Bankruptcy Act (11 USCA § 96(a), which should be surrendered as a condition to allowance. Extended hearings were held and much testimony taken; and the referee made written findings and an order that said claim be disallowed as a secured claim except as to the $24 new consideration, and that as a condition to the allowance as a general claim of the remaining amount due, the bank turn over and refund to the trustee the Caruso note and mortgage with such sums as it had collected thereon, less said $24; and the District Court affirmed this order.

The first claim of the bank, to which several assignments of error are directed, is that on April 9, 1928, Ross was not insolvent. In the assignments of error accompanying its

petition for review in the District Court, there is no intimation by the appellant of error committed by the referee in finding, as he did, that the bankrupt was insolvent at the date of the transfer.

■ Passing the trustee's claim that in this situation the question is not open to us, we have carefully examined the record, and think that there was ample evidence before the referee to support this finding of insolvency. On the face of the schedules, which, however, were filed more than three months subsequent to the assignment, assets exceeded liabilities. But a real estate mortgage for $3,000 against the Three Oaks store was omitted from the indebtedness, and this store and fixtures were scheduled by the bankrupt at cost without depreciation. The evidence showed that this business had never prospered. Ross testified that in originally buying the property he acted against much advice but was "bull-headed and stubborn enough to go ahead," and was now convinced that he had paid more than it was worth, and, further, that in March or April, 1928, his property at a fair valuation would not have paid his debts. And another witness put the value in April of the Three Oaks store, real estate, fixtures, and stock, as a going concern, at $6,500, which was very substantially less than the schedules showed; and also testified without objection that in April, 1928, Ross was insolvent.

The second claim of the appellant is that at the time of the transfer it had no reasonable cause to believe that the enforcement thereof would effect a preference.

The referee, in a carefully worded opinion, covered with painstaking thoroughness the claims of the parties and the evidence of the cashier of the bank and of the bankrupt, much of which was in conflict. He was of opinion and found that on April 9, 1928, Ross was insolvent and that the bank was shown to have knowledge of facts constituting reasonable cause to believe that the enforcement of the assignment of the mortgage would enable it to obtain a greater percentage of its debt than other creditors of the same class; and further that facts within the knowledge of the cashier charged the bank with the duty of making inquiry touching the bankrupt's finances, which inquiry would have disclosed his insolvency and the preferential character of the assignment.

■ This finding, concurred in by the District Court, will not be set aside upon anything less than a demonstration of plain mistake. Ten-nessee Finance Co. v. Thompson, 278 F. 597 (6 C. C. A.); Deupree v. Watson, 216 F. 483 (6 C. C. A.); Boston Nat. Bank v. Early, 17 F.(2d) 691 (1 C. C. A.)

■ There is no finding that the bank had actual knowledge of the insolvency when it took the transfer, but this is not necessary. In re States Printing Co., 238 F. 775 (7 C. C. A.); Boston Nat. Bank v. Early, supra. Equally inconclusive of the issue was the bank's evidence that it had no ground to believe the bankrupt was insolvent, in view of the finding, amply supported, as we think, by the testimony, that it had reasonable cause to believe that the use of the assignment would result in a preference, and had knowledge of facts putting it upon inquiry which would have disclosed Ross' insolvency and the preferential character of the transaction.

The testimony shows that the bank had carried loans for Ross for some time, knew that a considerable part of his debt was due to an unprofitable transaction in stock in a refrigerator company; that he had drawn checks without funds to meet them, and while he owned two confectionery stores, one in Buchanan and the other in Three Oaks, both were heavily incumbered, and in the second he had consistently lost the profits of the first. He sold the one in Buchanan, but used none of the proceeds to reduce the bank loans. The bank knew that at least one creditor in substantial amount was unable to collect its claim against Ross. It was urging him to have a relative indorse its notes, and had secured a verbal statement of the bankrupt's debts. In addition to the $3,000 real estate mortgage, there was also a chattel mortgage of $2,800 on the Three Oaks store of which the bank knew, and the bankrupt had told the cashier that this store was costing all that the Buchanan store made. In short, it evidently knew all about the unpromising character of the bankrupt's business and his failing circumstances. The only circumstance of importance in the bank's favor is its release of Miller as indorser on the $750 note. Before the referee no explanation was given of this, the cashier simply saying that Miller was responsible and they had released him "which perhaps we should not have done." The inference is open that this was either due to the willingness of the bank to do a favor to its director, or to the unwillingness of Ross to turn over a $3,000 mortgage to secure his debts unless his note to Miller was included; the chance that Ross would go into bankruptcy and the transaction be avoided as

a preference being one that the creditor had to take in either case.

We are of the opinion that the record does not only fail to demonstrate plain mistake in the findings of the referee and district judge, but that such findings are fully sustained by the evidence. The judgment of the District Court is therefore affirmed.