## SHEPARD v. UNITED STATES.
### No. 564.

Circuit Court of Appeals, Tenth Circuit.
April 5, 1933.

PHILLIPS, Circuit Judge, dissenting.

For former opinion, see 62 F.(2d) 683.

Harry W. Colmery and Balfour S. Jeffrey, both of Topeka, Kan., C. L. Kagey, L. M. Kagey, and Kagey & Black, all of Wichita, Kan., and Doran, Kline, Colmery & Cosgrove, of Topeka, Kan., for appellant.

S. M. Brewster, U. S. Atty., and L. E. Wyman, Donald Little, and Dan B. Cowie, Asst. U. S. Attys., all of Topeka, Kan., for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

COTTERAL, Circuit Judge.

It must have been an undue zeal that prompted counsel in casting the imputation upon this court that it in any way prejudged appellant's case, and found the errors justified in the "failures of counsel," especially since this court passed over certain fatal objections to a review of the rulings upon the evidence and the instructions to the jury. Rule 11 of this court requires assignments on questions of evidence to quote the full substance of the evidence admitted or rejected. But there was a total omission to comply with the rule. The instructions are not subject to review, because they do not appear in the bill of exceptions, and are only certified by the clerk. United States v. Taylor, 147 U. S. 695, 13 S. Ct. 479, 37 L. Ed. 335; Clune v. United States, 159 U. S. 590, 16 S. Ct. 125, 40 L. Ed. 269; Addis v. United States (C. C. A.) 62 F.(2d) 329. Appellant was therefore not entitled to be heard upon the objections to the testimony of Nurse Brown or Sergeant Gresser, or to contend that the instructions were faulty in not limiting the consideration of that testimony by the jury to rebuttal of the suicide theory. But, arriving at the same result, we did not notice these objections as we might have done and might well now do, and preferred, owing to the gravity of the case, to decide the questions raised on the assumption they were reviewable.

We adhere to the ruling that the declarations of Mrs. Shepard were competent testimony. The doctrine upon which they were admissible is thus stated in Connecticut Mutual Life I. Co. of Hartford, Conn. v. Hillmon, 145 U. S. 285, 12 S. Ct. 909, 36 L. Ed. 706. At page 295 of 145 U. S., 12 S. Ct. 909, 912, 36 L. Ed. 706, it is said:

"A man's state of mind or feeling can only be manifested to others by countenance, attitude, or gesture, or by sounds or words, spoken or written. The nature of the fact to be proved is the same, and evidence of its proper tokens is equally competent to prove it, whether expressed by aspect or conduct, by voice or pen. When the intention to be

proved is important only as qualifying an act, its connection with that act must be shown, in order to warrant the admission of declarations of the intention. But whenever the intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of the party."

The principle of that case is of course not open to question. It has been applied as an exception to the hearsay rule by the text-writers and the courts. 3 Wigmore on Ev. (2d Ed.) § 1725 et seq.; 4 Chamberlayne, Mod. L. Ev. § 2654; 11 Ency. Ev. 418; 22 C. J. 284; State v. Hayward, 62 Minn. 474, 65 N. W. 63; Commonwealth v. Trefethen, 157 Mass. 180, 31 N. E. 961, 24 L. R. A. 235; United States v. O'Brien (C. C. A.) 51 F.(2d) 37; Brawner v. Royal Indemnity Co. (C. C. A.) 246 F. 637; Lusk v. Phelps, 71 Okl. 150, 175 P. 756; The San Rafael (C. C. A.) 141 F. 270.

■ The state of mind or intention of a deceased person at a given time may become a distinct matter of proof. It is undoubted that Mrs. Shepard came to her death from mercurial poisoning. The defense was the poison was self-administered. Threats of suicide on her part were put in evidence, reinforced by her declarations that she did not want or expect to live. The tendency of that evidence was to show both her state of mind as averse to living and her intention to commit suicide. The objection of the defense was not tenable to opposing evidence in rebuttal on the same subject. It is within the distinct office of rebuttal to explain, repel, counteract, or disprove the evidence of the adverse party. Claycomb v. State, 22 Okl. Cr. 315, 211 P. 429. Mrs. Shepard's declarations introduced by the government were not merely narrative of a past event. In ascribing the poisoning to another, they tended to contradict the making of declarations imputed to her by the defense and to disprove a state of mind or intention disposed toward self-destruction. The evidence on both sides was relevant upon the issue of suicide or murder.

It is said the evidence in this case justifies suspicion but falls deplorably short of proof. We had not thought it necessary to specially comment in our original opinion on the force of the circumstances. We summarized the more important evidence favorable to the government. As there stated, the defendant had access to and obtained mercurial tablets, he prepared tablets for the nurse to give to his wife, he opposed the post mortem, he

sought to wed Grace Brandon, and he lavished gifts upon her. It suffices to quote from Burns v. State, 8 Okl. Cr. 554, 129 P. 657, at page 663, where it was said: "Both sacred and profane history furnish many examples showing that illicit love is a most powerful motive for and fruitful source of assassination." See, also, McClintock v. State, 29 Okl. Cr. 216, 232 P. 853.

■■ The point is emphasized that the declarations were not made under circumstances indicating trustworthiness. The rule conditioning their admission is not questioned. Evidence is cited to show the disordered condition at times of Mrs. Shepard's mind. One answer is that the declarations introduced by the defense were open to the like objection. But it was a preliminary matter for the trial judge to determine whether the witness was mentally competent. His ruling was presumably correct, and it is not reviewable unless it was clearly erroneous. New York Evening Post v. Chaloner (C. C. A.) 265 F. 204; District of Columbia v. Armes, 107 U. S. 519, 2 S. Ct. 840, 27 L. Ed. 618; Dutton v. Atlantic C. L. R. Co., 104 S. C. 16, 88 S. E. 263, affirmed 245 U. S. 637, 38 S. Ct. 191, 62 L. Ed. 525. We are not persuaded that error occurred. The ultimate question as to the weight of the evidence was one for the jury.

■ Counsel still insist that the instructions were faulty in not limiting without request the consideration by the jury of the declarations of Mrs. Shepard. The evidence itself was competent. The settled rule is that the request was indispensable. It was not dependent, as counsel urge, on the grade of the offense. The principle was applied by the Supreme Court in a prosecution for murder. Goldsby v. United States, 160 U. S. 70, 16 S. Ct. 216, 40 L. Ed. 343. The complaint of the instructions therefore fails for want of an appropriate request by the defense. Nowhere is the rule more clearly stated that errors not reserved will not be noticed than in an opinion of this court, delivered by Judge Lewis, in Bogileno v. United States, 38 F.(2d) 584, where it was held they must be serious and fatal to defendant's rights. Wiborg v. United States, 163 U. S. 632, 16 S. Ct. 1197, 41 L. Ed. 289; Brasfield v. United States, 272 U. S. 448, 47 S. Ct. 135, 71 L. Ed. 345; Gillette v. United States (C. C. A.) 236 F. 215; Lamento v. United States (C. C. A.) 4 F.(2d) 901; Reynolds v. United States (C. C. A.) 48 F.(2d) 762.

■ The declarations introduced by the government were not of that character. Coun-

sel for the defense minimize their influence by urging the incompetency of the declarant. The case was presented of a husband recreant to his marriage vows, with the opportunity and a powerful motive to perpetrate the homicide. Aside from the declarations of his wife, a conviction was fully justified, and they were in no sense fatal to the rights of the defendant. They were of minor weight as compared with the incriminating circumstances to which we have adverted.

Our conclusion is that the petition for rehearing is not well taken, and it is accordingly denied.

PHILLIPS, Circuit Judge (dissenting.)

For the reasons stated in my former dissent in this case, I am of the opinion that the admission of the testimony of Nurse Brown and Sergeant Gresser as to the statements made by Mrs. Shepard were prejudicial and reversible error. In a case involving the liberty of the defendant for the remainder of his natural life, I am not greatly concerned with technical defects in the errors assigned.

As observed in my former dissent, the statements adverted to above were not declarations manifesting an existing plan, intention, purpose, or design, but a mere narration of a past event; they had no probative value unless the facts stated were true; and they were not admissible under the existing circumstances as proof of the facts stated. Connecticut Mutual Life Ins. Co. of Hartford, Conn., v. Hillmon, 145 U. S. 285, 12 S. Ct. 909, 912, 36 L. Ed. 706, cited in the majority opinion on rehearing is not to the contrary. The court was there dealing, not with the narration of a past event, but with an existing intention, design, or purpose with respect to the future. The statement showed a state of mind at the time it was made, not in the past. In the opinion the court said:

"The existence of a particular intention in a certain person *at a certain time* being a material fact to be proved, evidence that he expressed *that intention at that time* is as direct evidence of the fact, as his own testimony that he then had that intention would be. After his death there can hardly be any other way of proving it; and while he is still alive, his own memory of his state of mind at a former time is no more likely to be clear and true than a bystander's recollection of what he then said, and is less trustworthy than letters written by him at the very time and *under circumstances precluding a suspicion of misrepresentation.*

"The letters in question *were competent, not as narratives of facts communicated to the writer by others, nor yet as proof* that he actually went away from Wichita, but as evidence that, shortly before the time when other evidence tended to show that he went away, he had the intention of going, and of going with Hillmon, which made it more probable both that he did go and that he went with Hillmon than if there had been no proof of such intention." (Italics mine.)

The majority recognize the qualification that statements showing a state of mind are only admissible when there are present circumstantial guaranties of trustworthiness, but say that was a question to be resolved by the trial court. I may grant the question in the first instance was for the trial court and rested largely in its discretion, but there must have been some basis for its determination that the circumstantial guaranties were present. Here, not only was there no evidence that they were present, but there was much to indicate the contrary.

Mrs. Shepard became ill on May 20, 1929, and died June 15 following. Nurse Brown testified to a statement made on the second day of her illness, and Sergeant Gresser to a statement made on the fourth or fifth day of her illness.

Major Strickler, a medical witness for the defendant, described Mrs. Shepard's condition on the first night of her illness as follows:

"Mrs. Shepard was lying in bed, fully clothed, and was apparently hearing voices. She continually reached out, as if picking objects out of the air, brushing them off of her bed. * * *"

He diagnosed her condition as polyneurotic alcoholic psychosis, "Simply a disorder of the mind characterized by these hallucinations, and the idea that she had been doing certain things which she had not done."

He said that during the first week, "She would tell me how she had gone down to Junction City that morning, or sometime during the day, and the various shops she had visited, the various ladies of the post she had conversed with, and how they would come home, and how they had lunch together, and played bridge in the afternoon, and where they had spent the afternoon, all of which was utterly impossible."

He said at the end of the first week, "Impairment of vision had improved and it was possible to break through her confusion and get some relevant and coherent answers from her."

Major Hawley, a medical witness for the government, described Mrs. Shepard's condition on the very day of the statement testified to by Nurse Brown, as follows:

"Mrs. Shepard was in bed, weak, ill, gave a history as having vomited a great deal the evening before and throughout the night, was still nauseated, the pupils dilated, weak, had a slight mental confusion which could be penetrated, that is, she would answer intelligently if you repeated your question."

Nurse Brown came on the case on the night Mrs. Shepard was taken ill. She testified as follows:

"When I arrived, Mrs. Shepard's condition was, she was in bed, very ill, and delirious. * * * With reference to her mental condition, she gradually cleared up. It was just a few days before it apparently cleared up."

The government's evidence showed that after the first week Mrs. Shepard's mental condition cleared up. Thus it will be seen that the statements testified to by Nurse Brown and Sergeant Gresser were made at a time when Mrs. Shepard was in a state of mental confusion and suffering from loss of memory and hallucinations.

Furthermore, the marital relations between Mrs. Shepard and her husband had become strained. She knew that she had lost the affection of her husband. The statements may have been prompted by a spirit of revenge.

"Heaven has no rage like love to hatred turned,
Nor hell a fury like a woman scorned."

Because of these facts and for the additional reasons stated in my former dissent, it appears to me that the conclusion is unavoidable that, not only were there no circumstantial guaranties of trustworthiness surrounding the statements, but they were made under conditions that cast grave doubt on their reliability.

The majority say the same is true of the statements introduced by the defendant, inferring, I assume, that they too were made when Mrs. Shepard's mental condition was abnormal. Such is not the record. Of the statements introduced by the defense, six were made prior to her last illness and four during such illness. Of the four made during such illness, two were made in the latter part thereof, when her mental condition had been restored to normal, and two during the early part thereof, when she was abnormal mentally.

Recreant though the defendant may have been to his marriage vows, and much as he may deserve censure therefor, he is here being tried for the crime of murder in the first degree. The evidence of his guilt of that crime is far from conclusive. That issue should be determined by a jury, after a fair trial upon competent evidence, and not by this court.

I cannot agree that the statements testified to by Nurse Brown and Sergeant Gresser were not fatal to the defendant's rights. The evidence of these statements, hearsay though it was, came to the jury with all the impressive awe of a voice from the grave. A deceased wife was permitted to enter the courtroom and point the finger of accusation at her living husband charged with her murder. That was the drama acted in front of a jury—a drama that might have been founded on the imagination of a disordered brain or on a desire for revenge, rather than on facts. Present, no oath, no test cross-examination, no sense of impending death, no circumstances of res gestæ impelling the declaration, no circumstantial guaranties of trustworthiness; these statements were mere declarations of past events, and the evidence thereof was hearsay, erroneous, and prejudicial, and should have been rejected.

It is my opinion that the petition for rehearing should have been granted, and I respectfully dissent from the denial thereof.