EMPORIA LOAN & INVESTMENT CO. v. REES.*

No. 797.

Circuit Court of Appeals, Tenth Circuit.

July 3, 1933.

Rehearing Denied Sept. 14, 1933.

Gilbert H. Frith, of Emporia, Kan., for appellant.

S. M. Brewster, of Topeka, Kan., for appellee.

Before LEWIS and PHILLIPS, Circuit Judges, and POLLOCK, District Judge.

POLLOCK, District Judge.

This action was brought by Rees, as trustee of the Trusler Grain Company, bankrupt, to recover certain sums of money from the Emporia State Bank and the Emporia Loan & Investment Company. The complaint contained three counts, each of which alleged voidable preferential payments made prior to the adjudication. The bank went out on demurrer. The case against the loan company was tried to a jury. At the close of all the evidence motions for a directed verdict were overruled. Judgment was entered for the loan company on the first and second counts, and against it on the third count for the sum of $5,341.77. This appeal is taken from the judgment entered on the third count.

The loan company contends that its motion for a directed verdict should have been sustained for the reason that there was no evidence introduced showing that it knew or had reason to believe that at the time the payment was made that it knew or had reason to believe that the grain company was insolvent or that the payment would effect a preference and enable it to obtain a greater percentage of its debt than other creditors of the same class.

The Trusler Grain Company was, among other things, engaged in trading on the Chicago Exchange. It was located in Emporia, Kan., carried its bank account with the Emporia Bank and its trading account with Bennett & Co. in Chicago. The Emporia Bank and the loan company were affiliated. L. W. Wayman was cashier of the bank, and secretary of the loan company. H. P. Trusler was president of the grain company and director in the bank and loan company. He became a director in the bank about January, 1930, when he purchased bank stock under an agreement with Wayman to repurchase the stock at $400 a share. After he became a director in the bank, the grain company negotiated its loans with the loan company. The grain company had done business with the bank for about eight years prior to its suspension of business. It made some loans with the other banks in Emporia, but the major part of its business was done with the bank and loan company.

On November 20, 1930, the account of the grain company at the bank was overdrawn $2,504.71. About noon Trusler called and asked Wayman to increase his loan $6,000 or $8,000 which was refused. The grain company owed the loan company at that time about $16,000. In the afternoon a check of the

*For opinion denying rehearing, see 66 F.(2d) 789.

226

grain company for $4,500 payable to one Marshall came in. The check was protested and returned. Trusler went to the bank a few minutes before it closed and made a deposit of $9,303.68. After the overdraft was paid, a balance remained of $5,341.77. Trusler again asked if he could increase his loan and was again refused. Wayman told him they were trying to reduce the loans rather than increase them. Trusler then stated that if Wayman would take up his bank stock at $400 a share he would pay his notes. Wayman agreed and the stock was turned over to the loan company at $400 a share, and $12,000 credited on the notes that the grain company owed the loan company. Wayman did not make up to the loan company any loss suffered by it because of a depreciated value of the bank stock. The stock also was the personal property of Trusler and not the grain company. Trusler then wrote a check for the balance of the grain company's account ($5,341.77), which was turned over to the loan company with the exception of $200, which was turned over to Trusler personally. The following day the grain company suspended business. Wayman testified that he did not know the grain company was insolvent, nor did he have reason to suspect it. Trusler testified that he did not tell Wayman that the grain company was insolvent and was going to suspend business the following day. The creditors of the grain company, other than the loan company, will receive 12 per cent. of their claims.

Section 60b of the Bankruptcy Act, as amended by Act June 25, 1910, § 11 (11 US CA § 96 (b), defines the circumstances under which a preference is voidable for the benefit of creditors. See Remington on Bankruptcy, vol. 4, § 1628. All the circumstances of a voidable transfer are admitted with the exception of knowledge by the loan company of the insolvency of the grain company or reasonable cause to believe that a preference would be effected.

A voidable preference implies intent or willingness on the creditor's part to deplete the insolvent fund in order to obtain satisfaction in whole or in part of his claim. The question of the existence of the reasonable cause for so believing is a question of fact. Boone v. Merchants' & Farmers' Bank (D. C. N. C.) 285 F. 183; Boston Nat. Bank v. Early (C. C. A. 1) 17 F.(2d) 691; Bassett v. Evans (C. C. A. 8) 253 F. 532; Remington on Bankruptcy, vol. 2, par. 1820.

If substantial evidence is introduced showing facts and circumstances in possession of the creditor at the time of the payment, which would cause an ordinarily prudent business man to conclude a preference was intended, it is strictly a question for the jury and not the court. Sundheim v. Ridge Ave. Bank (D. C. Pa.) 138 F. 951, affirmed Ridge Ave. Bank v. Studheim (C. C. A.) 145 F. 798. It is not necessary to show actual knowledge on the part of the creditor. It is enough if the circumstances are sufficient to put a person of ordinary prudence and discretion upon inquiry. In re McDonald & Sons (D. C. S. C.) 178 F. 487; Remington on Bankruptcy, vol. 2, §§ 1822, 1823.

The evidence introduced here was clearly sufficient to submit the case to the jury. Trusler and Wayman were close personal friends. Trusler was president of the grain company and a director in the bank and in the loan company. The grain company had done business for about eight years with the bank. Its account was overdrawn frequently, but the afternoon deposit usually covered the overdraft. Its account was overdrawn at noon on the 20th of November, when Trusler called for the additional loan. A check for $4,500 was protested that afternoon. Nothing was said to Trusler about the protested check. Just before closing time he made a deposit which covered the overdraft and left a balance of $5,341.77. He again requested the additional loan and was refused, the reason given being that the bank wanted to reduce its loans rather than increase them. Trusler then retired $12,000 of the grain company's loan with his personal bank stock. He retired the balance by giving a check on the grain company for $5,341.77. This closed the grain company's account in the bank. Wayman knew when the account was closed that the $4,500 protested check was outstanding. Trusler also had knowledge of that fact. It has been held that knowledge of checks dishonored may be evidence tending to show reasonable cause for belief of insolvency. Remington on Bankruptcy, vol. 2, § 1832, p. 650, and cases cited under note 12. Furthermore, Wayman had the loan company retire $12,000 of the grain company's loan by taking over Trusler's personal bank stock. Wayman personally had agreed to take this stock off Trusler's hands at $400 a share, but the loan company was not a party to the agreement. Wayman testified that Trusler probably wanted to get rid of the bank's stock because it was not of the value at which he (Wayman) had agreed to repurchase, yet he also testified that he did not reimburse the loan company for any loss it might have sustained because of its retiring his obligation.

The closing of the grain company's account with a protested check outstanding and especially in view of the friendly relations of Trusler and Wayman; the withdrawal of Trusler as director in the bank by disposing of his stock to satisfy a firm obligation; the acceptance by the loan company of the bank stock at the figure Wayman personally agreed to redeem it, and the failure of Wayman to make any arrangements with the loan company are all circumstances which should have gone to the jury for the purpose of determining whether there was reasonable cause to believe that the Grain Company was insolvent. See Huttig Mfg. Co. v. Edwards (C. C. A. 8) 160 F. 619.

It is further contended that the court erred in refusing to give the following instruction:

"For his third cause of action plaintiff alleges that on November 20, 1930, the Trusler Grain Company paid to the defendants $5,341.77 which was applied by the defendant on indebtedness owing it from the Grain Company.

"The defendant admits the payment of this sum of money and admits that it was applied upon an indebtedness alleged to be $17,000.00 due to it from the Grain Company on that date, but alleges that as partial security for said indebtedness said Grain Company had previously delivered to it certain negotiable Masonic bonds of the value of $3,000.00 and that when said payment of $5,341.77 was received by it, said Grain Company demanded and received said bonds so pledged by it.

"Under these circumstances, you are instructed that the net payment received by the defendant from the Grain Company on November 20, 1930, was the sum of $5,341.77 less the value of the Masonic bonds so returned to said Grain Company.

"The law presumes that every person will pay his legal obligations and in the absence of evidence to the contrary you are warranted in assuming that the bonds in question were worth their face value, namely, $3,000.00. The sum of $3,000.00 should therefore be subtracted from the payment of $5,341.77, leaving a net payment on that date of $2,341.77."

■ The instruction is not subject to review for the reason that it does not appear in the bill of exceptions. Shepard v. United States (C. C. A. 10) 64 F.(2d) 641, decided April 5, 1933; Addis v. United States (C. C. A. 10) 62 F.(2d) 329; United States v. Taylor, 147 U. S. 695, 13 S. Ct. 479, 37 L. Ed. 335; Clune v. United States, 159 U. S. 590, 16 S. Ct. 125, 40 L. Ed. 269.

■■ The trial court denied a motion for a new trial and such ruling is assigned as error. A motion for a new trial is addressed to the discretion of the trial court and its ruling thereon is not open to review in the absence of a showing of abuse of discretion. McPherson v. Cement Gun Co. (C. C. A. 10) 59 F. (2d) 889; Maloney Tank Mfg. Co. v. Mid-Continent Petr. Corp. (C. C. A. 10) 49 F. (2d) 146; Shannon v. Shaffer Oil & Ref. Co. (C. C. A. 10) 51 F.(2d) 878, 78 A. L. R. 851; McBoyle v. United States (C. C. A. 10) 43 F.(2d) 273. This record does not show an abuse of discretion.

On the record the judgment is right and must be affirmed.