## VILES v. PRUDENTIAL INS. CO. OF AMERICA.

### No. 1918.

Circuit Court of Appeals, Tenth Circuit.

Nov. 8, 1939.

Rehearing Denied Nov. 22, 1939.
Writ of Certiorari Denied Jan. 15, 1940.
See 308 U.S. ——, 60 S.Ct. 387, 84 L.Ed. ——.

Edmond L. Viles, pro se.

Horace Phelps, of Denver, Colo. (James D. Benedict and Horace F. Phelps, both of Denver, Colo., on the brief), for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

On June 10, 1927, the Prudential Insurance Company[1] issued to Edmond L. Viles its policy of life insurance for $10,000. The policy also insured Viles against total and permanent disability. Viles paid three semiannual premiums which, with the grace period, kept the policy in force until January 10, 1929.

---

[1] Hereinafter referred to as the Insurance Company.

On November 25, 1936, Viles filed a suit in the district court of Jefferson County, Colorado, for specific performance of that portion of the policy relating to disability benefits. The suit was removed to the United States District Court for the District of Colorado. On an appeal from an order sustaining the Insurance Company's demurrer to the complaint and dismissing the suit, the cause was reversed and remanded with instructions to reinstate the complaint, overrule the demurrer, and grant Viles leave to file an amended complaint wherein he might plead, in addition to other essential allegations, the facts with reference to proof of disability, the time of making same, and the reason for the delay. See Viles v. Prudential Insurance Company, 10 Cir., 96 F.2d 3.

Thereafter, Viles filed an amended complaint wherein he alleged that during the month of October, 1928, he became totally and permanently disabled because of the loss of sight in both eyes; that during the grace period he called on the Insurance Company's general agent at Denver, Colorado, explained his disability and requested blank forms for the purpose of furnishing written proof of such disability; that the general agent advised him the Insurance Company would not consider a claim for disability benefits until he had become totally blind or otherwise helpless; that he relied upon the statement of the general agent and did not discover he had been misled until March, 1935; that after such discovery he again called upon the Insurance Company's general agent and applied for disability benefits and was given blank forms; that such forms were executed by Viles and his physician and delivered to the general agent on April 5, 1935; that thereafter he was advised by the Insurance Company it had investigated his claim and found his disability, if any, did not occur while the policy was in force.

The Insurance Company, in its answer, alleged that the policy lapsed for nonpayment of premiums on January 10, 1929, and that Viles did not become totally and permanently disabled prior thereto. It denied that Viles called on its general agent at Denver during the grace period for the purpose of making proof of disability. It admitted that on March 25, 1935, Viles called on its general agent and on April 5, 1935, delivered to such agent forms executed by Viles and his physician in which total and permanent disability was claimed. It also pleaded unreasonable delay in making proof of claim, laches, and the statute of limitations.

The trial court specially found that Viles did not prior to January 10, 1929, nor at any time subsequent to June 10, 1927, nor at any time while the policy was in force, become totally and permanently disabled within the meaning and provisions of the policy; that the policy lapsed on January 10, 1929, and subsequent thereto Viles during the years 1929, 1930, and 1931 was able to and did follow gainful occupations for which he received substantial compensation in money; that no claim, notice, or proof of disability was furnished to the Insurance Company until on or about April 5, 1935; that no conversation occurred between Viles and the Insurance Company's general agent in December, 1928, or January, 1929; and that the delay in making and furnishing proof of the alleged disability was unreasonable under the facts and circumstances and did not comply with the provisions of the policy requiring the filing of proof of disability within a reasonable time.

A judgment was entered dismissing the suit. The trial court overruled a motion for a new trial, based on alleged newly discovered evidence, on the ground that the alleged newly discovered evidence was cumulative.

Viles has appealed.

Doctor Donald O'Rourke, an expert witness for Viles, testified that he made an examination of Viles' eyes on April 16, 1929, and found his vision in the right eye was one-tenth for distance and in the left eye, perception of light; that the condition he found was in the back of his eyes and was a congenital defect which had existed since birth; that he examined Viles on April 5, 1935, for the purpose of executing the proof of disability filed with the Insurance Company, and a few months prior to the trial in connection with an application for a blind benefit from the state of Colorado, and his findings were the same as those in 1929. While being examined by Viles on direct examination he stated:

"I am not familiar with the rulings of the court, but it strikes me here this morning that with vision of one tenth as recorded, it would not be possible for you to stand up and read as I have seen you do here."

Viles stated that he was not reading, but was just looking. On cross-examination, Doctor O'Rourke stated that the de-

fect he found in Viles' eyes was congenital, was not progressive, and, in his opinion, had never changed. He further stated that in making an examination of eyes for the purpose of determining defects in vision, in order to obtain accurate results cooperation of the patient is necessary and the doctor must rely very largely upon what the patient states he can see.

Viles testified that prior to the fall of 1928, he represented several large concerns and sold hosiery, lingerie, and other dry goods to retail merchants and department stores and earned from $5,000 to $7,200 a year; that his vision had always been impaired; that glasses largely corrected the defect until the fall of 1928, when his vision became greatly impaired; that he called at the Denver office of the Insurance Company and talked to its general agent; that the general agent advised him he would not be entitled to disability benefits until he was totally blind or otherwise helpless; that he believed the agent knew the law and the facts, and forgot all about the policy until early in 1935, when he learned that a man, who had better vision than he, was drawing disability benefits from a life insurance company; that he again called on the general agent of the Insurance Company and insisted on blanks for proof of loss which were subsequently filled out and filed. On cross-examination Viles admitted that he signed and swore to a complaint against the Richmond Hosiery Mills in which he claimed damages in the sum of $9,000 for the cancellation of an employment contract running from April 1, 1924, to September 1, 1929; that he entered into a contract to act as salesman for the Mills Novelty Company of Chicago on March 31, 1930, and verified a complaint against that company, which contained the following: "On or about March 31, 1930, the defendant employed the plaintiff to sell its goods on commission and under such contract of employment the plaintiff earned and there is now due him as such commission, the sum of $3,294.82"; that he and his wife ran the Mode Art Hosiery & Corset Shop, Inc., from about June, 1928, until it was adjudicated a bankrupt on June 27, 1930; and that he filed a claim in the bankruptcy proceeding for salary from November 1, 1927, to February 1, 1930, for $150 per month. In the claim he credited payments aggregating $3,109.08, and asserted a balance due of $940.92. Viles testified that he was employed as a salesman in California in 1931 and earned $750 during the first three months

of that year; that thereafter he filed certain civil actions for damages. He admitted that in the civil actions, he filed certain verified papers wherein he swore that due to the wrongful acts of the defendants in such actions he lost a $10,000 position in California. In an application for an operator's license to drive an automobile made on August 17, 1932, he made a negative answer to the following question: "Have you any physical defect which would prevent you from properly operating a motor vehicle?" In an application for the position of warden of the state penitentiary filed with the Civil Service Commission of Colorado on or about December 12, 1932, he stated he had no physical or mental defect that would prevent him from holding such position except astigmatism. In an application for reinstatement of a policy of life insurance with the Equitable Life Assurance Society on October 9, 1929, he made a negative answer to the following question: "Have you, on account of your health, ever left your work for more than one month or changed your occupation or dwelling, or traveled?" He drove his automobile from Golden, Colorado, to Denver, a distance of some 12 to 15 miles, the morning of the trial.

Glen A. McTaggart, a witness for the Insurance Company, testified that he was general agent for the Insurance Company in Denver and had been since October 29, 1928; that Viles did not call on him during December, 1928, or January, 1929, and that he first saw Viles in the spring of 1935.

Witnesses for the Insurance Company testified that after January, 1929, Viles walked about the streets of Denver, dodged in and out of traffic, drove an automobile, examined transcripts of testimony in the office of the United States Attorney and appeared to be reading same without the aid of a reading glass, and frequently visited the state district court law library where he found and took down law books from the shelves and appeared to be reading them without the aid of a reading glass.

Viles, on rebuttal, testified that he could not read without a reading glass; that he was self-conscious and undertook to make it appear he was seeing when he really could not see and that he only drove his car in emergencies.

■ Where a chancellor has considered conflicting evidence and has made his findings and decree thereon, they must be regarded as presumptively correct, and unless

a serious mistake has been made in the consideration of the evidence, or an obvious error has intervened in the application of the law, the decree should be permitted to stand.[2]

 Here, the evidence, while conflicting, clearly sustains the finding that Viles did not become totally and permanently disabled through the loss of eyesight while the policy was in force.

Viles asserts that the Insurance Company denied liability in June, 1935, on the sole ground that his alleged disability did not occur while the policy was in full force and effect and that this constituted a waiver of all other defenses.

 On April 18, 1935, the Insurance Company wrote Viles that it had received his application for disability benefits, stated that according to its records the policy had been cancelled for nonpayment of the premium due December 10, 1928, and further stated:

"However, we are willing to look into the matter to determine whether there is any basis for extending favorable consideration to the claim. It is to be especially understood that by inquiring into the facts of the case the Company is not waiving any of its rights or defenses under the policy."

Hence, it may be doubted that by denying liability on the ground the alleged disability did not occur while the policy was in force and effect, the Insurance Company waived other defenses. Moreover, failure to file proofs of loss in accordance with the terms of the policy within a reasonable time after the alleged disability arose was not an affirmative defense. It was incumbent on Viles to allege and prove as a part of his case that he filed such proofs within a reasonable time.[3] The proof sustained the finding that the proofs of loss were not filed within a reasonable time.

Viles further contends that the trial court erred in overruling his motion for a new trial. A motion for a new trial is addressed to the discretion of the trial court, and its ruling thereon is not open to review in the absence of a showing of abuse of discretion.[4] The affidavits and exhibits attached to the motion showed the alleged newly discovered evidence was cumulative. Hence, the trial court did not abuse its discretion in denying the motion for a new trial.[5]

The judgment is affirmed.

---

[2] Stearns v. Central Petroleum Co., 10 Cir., 93 F.2d 638, 641; Whitchurch v. Crawford, 10 Cir., 92 F.2d 249, 254; Standard Oil Co. of Colo. v. Standard Oil Co., 10 Cir., 72 F.2d 524, 527; Stewart v. American Life Ins. Co., 10 Cir., 89 F.2d 743, 747.

[3] Metropolitan Casualty Ins. Co. v. Johnston, 3 Cir., 247 F. 65, 69, 7 A.L.R. 175; Peters v. Mutual Life Ins. Co., 3 Cir., 92 F.2d 301; Friedman v. Orient Ins. Co., 278 Mass. 596, 180 N.E. 617, 618; New York Life Ins. Co. v. Sinquefield, 231 Ala. 185, 163 So. 812, 813.

[4] Century Indemnity Co. v. Shakespeare, 10 Cir., 74 F.2d 392, 394; Emporia Loan & Inv. Co. v. Rees, 10 Cir., 66 F.2d 225.

[5] Mutual Life Ins. Co. v. Treadwell, 5 Cir., 79 F.2d 487, 489; Payton v. Ideal Jewelry Mfg. Co., 1 Cir., 7 F.2d 113, 114; Shelton v. Southern Ry. Co., D.C. Tenn., 255 F. 182, 183; Flannelly v. Delaware & H. Co., C.C.Pa., 165 F. 350; Wright v. Southern Exp. Co., C.C.Tenn., 80 F. 85, 89; Flint & P. M. R. Co. v. Marine Ins. Co., C.C.Mich., 71 F. 210, 221.