**KIRST v. BUFFALO COLD STORAGE CO.**
No. 385.

District Court, W. D. New York.

Oct. 25, 1940.

402

Dudley, Stowe & Sawyer, Horace C. Winch and Roy P. Ohlin, all of Buffalo, N. Y., for plaintiff.

G. Mowson Berg, of Buffalo, N. Y., for trustee.

Newcomb & Walsh and Walter C. Newcomb, all of Buffalo, N. Y., for defendant.

KNIGHT, District Judge.

Bankrupt was engaged in the business of selling beverages. At its inception it borrowed $15,000 from defendant, principally for the purchase of stock and fixtures, and this was purported to be secured by an agreement giving a lien thereon. This amount was subsequently reduced to $12,500, which amount was secured by three notes, each of which contained a pledge agreement covering a specified number of cases of beverages. From October, 1936, until June 1, 1939, bankrupt operated freely in the purchase and sale of merchandise. At that time an inventory disclosed that the value of bankrupt's stock had fallen from $15,000 on April 31 to about $7,500, whereupon defendant took possession of bankrupt's stock and excluded bankrupt from the place of business which bankrupt had rented from defendant. On June 10, 1939, defendant sold the merchandise under the pledge agreement. On June 12, 1939, the beverage company was adjudicated bankrupt.

The trustee has instituted this action to recover the value of the goods seized on the ground that the transfer constituted a preference under Section 60, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a, that it violated Section 15 of the Stock Corporation Law of New York, Consol. Laws, c. 59, prohibiting transfers by an insolvent corporation, and that it violated Section 44 of the Personal Property Law of New York, Consol.Laws, c. 41, with regard to transfers of goods in bulk. Defendant claims that it had possession under a warehouse agreement as well as by virtue of the pledge agreement during the entire time of bankrupt's operation and that there was no new taking of possession on June 1, 1939. The question presented is whether defendant acquired a valid lien upon the merchandise.

Bankrupt, by virtue of a rental agreement, occupied part of a building owned by the defendant, having its office therein as well as its stockroom. It had its own sign over the entrance. Defendant had no access to the bankrupt's place of business. No sign, either upon the premises or the merchandise indicated that the defendant had any interest in the stock of merchandise carried by the bankrupt. The assistant shipping clerk in the employ of bankrupt's predecessor was employed by bankrupt in the same capacity. He entered into an agreement with the defendant whereby he was to act as custodian of the property of the bankrupt while said property was purportedly in the possession of the defendant under the warehouse agreement. This warehouse agreement provided by its terms that bankrupt was turning over said property to the defendant for the issue of warehouse receipts, the goods to be released upon the surrender of such receipts.

The custodian stated that after signing the employment agreement he had no contact with the Buffalo Cold Storage Company or any representative thereof except that someone came in each time an inventory was taken; that he received his instructions from an officer of the beverage company; that there was no change in his duties as receiving and shipping clerk; that he never received any orders from the defendant pertaining to the release of goods but issued all goods upon orders of the beverage company; that he never knew to what extent warehouse receipts were issued but did know that he was supposed to see that about $12,000 worth of merchandise was on hand; that inventories were taken at the end of each month only and that he was not aware during the month of May, 1939, of the amount of shrinkage in the value of the merchandise although he knew that the stock was greatly depleted as the result of the loss of the sale of one brand of beer.

The president of the beverage company testified that no permission or release was secured from the cold storage company for the withdrawal of merchandise from day to day; that the custodian kept no record of sales and never issued releases on merchandise; that monthly inventories were taken in the presence of representatives of the defendant; that no representative of the defendant had a key to the premises occupied by the bankrupt.

■ It is evident that this was not a warehousing in which the warehouseman took possession of the goods and retained control over them, as authorized by Article 9 of the General Business Law of New York, § 90 et seq., Consol.Laws, c. 20. This definitely provides for a warehouseman's lien "on goods deposited * * * in his hands." Sec. 112. The facts disclose a rental agreement as to the part of the building occupied. The beverage company had complete dominion over such space, defendant not even having a key to the door. While a so-called custodian was employed, he received no instructions from, made no reports to, and issued no releases on behalf of, the warehouseman. The possession and control of the beverage company was such that, had it so desired, it could have removed the entire stock. These facts are not consistent with the claim that there was a delivery of possession to the defendant and a retention of possession by the defendant. I find that possession was never obtained by the Buffalo Cold Storage Company so as to give rise to a warehouseman's lien.

■■ The same facts refute the claim that there was a pledge of the goods which was valid as against the interest of third parties. The principles involved are those concerning a common-law pledge, there being no claim upon the basis of any statutory lien other than as stated above. The rule is well settled that there must be a change of possession or some notice to the public of the interest of the pledgee to create a pledge which will bar the interests of third parties. "The common law does not recognize a lien unaccompanied by possession either actual or constructive. This does not depend in any way upon fraud, actual or presumptive. * * * The law as to pledges is clear, viz., that they are utterly invalid unless accompanied by actual or constructive possession." American Can Co. v. Erie Preserving Co., 2 Cir., 183 F. 96, 98. New York

Security & Trust Co. v. Lipman, 157 N.Y. 551, 52 N.E. 595, is wholly distinguishable from the case at bar. Among the distinguishing features is that the merchandise in question concededly was in the actual possession of the warehouse. In re Spanish American Cork Products Co., 4 Cir., 2 F.2d 203; In re Merz, 2 Cir., 37 F.2d 1. It must be found that there was no pledge to defendant of the merchandise of bankrupt, which was valid as against other creditors.

■ Defendant also contends that the taking of possession, although within the four months prior to the adjudication, was not a preference because an equitable lien existed prior to that time. This contention leaves out of consideration the fact that the lien was a secret one of which no notice or opportunity of discovery was given to others, bankrupt being left in apparent full ownership of the merchandise. Irving Trust Co. v. Commercial Factors, 2 Cir., 68 F.2d 864; Corney v. Saltzman, 2 Cir., 22 F.2d 268; Union Trust Co. v. Townshend, 4 Cir., 101 F.2d 903.

The fact of the insolvency of the debtor on June 1, 1939, was stipulated by the parties. The record indicates that defendant knew of such insolvency or had reason to know and was charged with the duty of inquiring to determine the situation. The president of the defendant was a stockholder and the vice-president of the bankrupt until June 18, 1938. Each month the defendant received a copy of the bankrupt's inventory of merchandise. The president of the beverage company testified that the president of the defendant knew of the fact that the inventory was being depleted during May, 1939. Defendant also knew that the indebtedness of the beverage company had been reduced by a relatively small amount during the entire period of operation. Defendant was in close touch with the operations and financial condition of the debtor during all of that time.

■ Though in fact it did not have security for its loan to bankrupt, defendant believed that it did. The fact that it required monthly inventories indicates that it relied heavily on its supposed security. The fact that defendant seized the entire stock of bankrupt, which it regarded as its security, immediately upon finding its value below the amount of the loan, indicates that defendant had little faith in the prospect of recovery from other assets

of the beverage company. Under the circumstances here disclosed, the court must find that defendant was put on notice of the insolvency of bankrupt at least to the extent which demanded further inquiry, which inquiry would have disclosed such insolvency. Buchanan State Bank v. De-Grott, 6 Cir., 39 F.2d 397; Boston National Bank v. Early, 1 Cir., 17 F.2d 691; New York Credit Men's Association v. Chaityn, D.C., 29 F.Supp. 652. That being true, defendant should have realized that its seizure of the entire stock of goods of the bankrupt was voidable if bankruptcy proceedings followed within four months.

It can not be questioned that the seizure of bankrupt's merchandise resulted in the receipt by defendant of a greater proportion of its claim than would be received by other creditors. Such appropriation depleted the assets of bankrupt to the extent that the remaining assets were scheduled at a value of less than $1,000, while the indebtedness of bankrupt, excluding the amount owing to defendant and contingent liabilities, was scheduled at over $30,000. It is evident that the defendant received a voidable preference and that plaintiff is entitled to have the transfer set aside.

■ On June 10, 1939, the defendant sold the merchandise of bankrupt. A custodian appointed by the court on June 15, 1939, was authorized to receive and take charge of the beverages stored in bankrupt's place of business. Upon an affidavit showing that it had sold the goods at inventory value, i. e., $7,562.30, defendant applied for modification of the order. In view of the financial responsibility of the defendant, the court allowed the sale to be consummated.

Upon the trial the president of the defendant testified that the sale was for the inventory value less ten percent. This ten percent is claimed to be for services in selling the merchandise. No claim was made to this at the time the defendant applied to modify the order appointing the custodian. In any event, however, defendant would not be entitled to this credit. I find under the evidence that the value of the merchandise is $7,287.35. Such was the valuation placed on the inventory taken, in the presence of representatives of the defendant, on the day previous to the seizure of the merchandise. The correctness of such inventory has not been questioned.

With respect to the empty cooperage and bottles, there is testimony to indicate that inventory value would not be the real value, unless the empties were in the hands of the bankrupt, since returns would only be accepted by the breweries on the basis of crediting the bankrupt's account. This being true, a satisfactory conclusion may be reached if the total value of the merchandise as found is reduced by the inventory value of empty cooperage and bottles remaining on hand. A credit in the amount of $734.77 should be given the defendant on account thereof.

A question has been raised that the transfer or sale of the merchandise in question by the defendant was in violation of the so-called Bulk Sales Act of the State of New York, Sec. 44 of the N. Y. Personal Property Law. This section relates to sales in bulk of merchandise "pertaining to the conducting of the business of the seller." The sale in question did not relate to the conducting of the business of the bankrupt, and it would seem that this statute has no application. However, determination of this question is not necessary in view of the decision hereinbefore indicated.

■ The answer of the defendant raised the issue of jurisdiction. This point, however, has not been pressed. By virtue of Bankruptcy Act, Sections 60, 67 and 70, 11 U.S.C.A. §§ 96, 107, 110, it seems that the court does have jurisdiction.

Plaintiff is entitled to recover from defendant the sum of $6,552.48 with interest.

Findings and conclusions of law may be submitted to conform to this decision.